COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McCullough and Senior Judge Willis
Argued by teleconference


DEBRA S. BURKE

<table>
<tr><td>v.      Record No. 1565-11-3</td><td>OPINION BY<br>JUDGE STEPHEN R. McCULLOUGH<br>MARCH 20, 2012</td></tr>
</table>

CATAWBA HOSPITAL, VIRGINIA
 DEPARTMENT OF HUMAN RESOURCE
 MANAGEMENT, ERNEST G. SPRATLEY
 AND CARL WILSON SCHMIDT


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

David D. Walker (David D. Walker, P.C., on brief), for appellant.

Sydney E. Rab, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellees Catawba
Hospital, Virginia Department of Human Resource Management and
Ernest G. Spratley.

No brief or argument for appellee Carl Wilson Schmidt.


Debra S. Burke appeals from a decision of the Circuit Court of Roanoke County.  She

argues the circuit court erred in (1) concluding that it had no jurisdiction in policy matters of the

state and, therefore, lacked the authority to overrule the interpretation of state policy of the

Department of Human Resource Management; (2) holding that the failure of the Agency[1] to

follow its own grievance procedure did not violate Code § 2.2-3000; (3) failing to redress alleged

violations of the Grievance Procedure Manual, particularly § 7.2 of the Manual; and finally

(4) holding that the Agency's failure to request an administrative hearing ended the case

_____

[1] The Catawba Hospital falls under the Department of Behavioral Health and
Developmental Services which for simplicity's sake we refer to as the Agency.

following the hearing officer's decision on February 7, 2011. We find no error and affirm the decision of the circuit court.

BACKGROUND

Debra S. Burke was employed as an Administrative and Office Specialist II by Catawba Hospital, a state hospital. She was required, among other duties, to "[p]rovide clerical support to Nursing units; [and] maintain timely, accurate record keeping and filing of HIM information." One of her specific responsibilities was to listen to a doctor's dictated notes and type the recommendations within three workdays of the doctor's visit. The typed notes were used by a Licensed Independent Practitioner to determine a patient's medical treatment.

A doctor was present at the hospital on August 26, 2010, and he dictated his recommendations for seven patients. None of the recommendations were transcribed within three days, and most were not transcribed for more than two weeks. As a result of this delay, at least one patient did not receive pain medication when needed and likely suffered unnecessary pain as a consequence. Burke's explanation was that the tapes were lost when her office moved from one floor to another.

The hospital found that Burke had infringed Departmental Instruction ("DI") 201, the policy governing the "Abuse and Neglect of Individuals Receiving Services in Department Facilities." Burke was issued a "Group III" Written Notice and terminated.[2] DI 201 defines client abuse as

> any act or failure to act by an employee or other person responsible for the care of an individual in a Department facility that was performed or was failed to be performed knowingly, recklessly or intentionally, and that caused or might have caused physical or

_____

[2] Group III offenses "include acts of misconduct of such a severe nature that a first occurrence normally should warrant termination." See Dep't of Human Res. Mgmt., Policy 1.60 Standards of Conduct, 9 (effective Apr. 16, 2008, revised June 1, 2011), available at http://www.dhrm.virginia.gov/hrpolicy/web/pol1_60.pdf.

psychological harm, injury or death to a person receiving care or treatment for mental illness, mental retardation or substance abuse.

Burke filed a grievance and obtained a hearing. Hearing Officer Carl Wilson Schmidt concluded that the hospital misread DI 201. In his view, the policy applied to persons "responsible for the care . . . of patients." Because Burke's responsibilities were clerical in nature, the hearing officer reasoned she did not violate the policy. The hearing officer reduced the disciplinary action to a Group II offense, with a ten-workday suspension, and reinstated Burke.[3]

The Department of Behavioral Health and Developmental Services, the hospital's parent agency ("the Agency"), sought review on two fronts. First, it unsuccessfully petitioned the hearing officer for reconsideration. On February 7, 2011, the hearing officer affirmed his earlier decision. Second, the Agency petitioned the Department of Human Resource Management ("DHRM") for a review of the hearing officer's interpretation of DI 201. In its petition for review, the Agency's principal argument was that the offense could be elevated to a more serious offense under DHRM Policy No. 1.60. Under Policy No. 1.60, "an offense typically associated with one offense category may be elevated to a higher level offense." On March 9, 2011, DHRM issued its policy ruling, stating that it did not "concur with the hearing officer's determination regarding the applicability of" DI 201. It concluded that DI 201 applied to clerical personnel such as Burke. DHRM remanded this decision to the hearing officer "in light of the interpretation by this Agency of DI 201." On remand, in light of the DHRM's definitive

---

[3] Group II offenses "include acts of misconduct of a more serious and/or repeat nature that require formal disciplinary action." See Dep't of Human Res. Mgmt., Policy 1.60 Standards of Conduct, 8 (effective Apr. 16, 2008, revised June 1, 2011), available at http://www.dhrm.state.va.us/hrpolicy/web/pol1_60.pdf.

interpretation of DI 201, the hearing officer on March 14, 2011, reversed his previous decision and upheld the Agency's disciplinary action.

Burke then appealed to the circuit court. The circuit court held that it was without jurisdiction to review "the matters of policy presented in this appeal." The court also found no violation of Burke's right to due process of law. This appeal followed.

## ANALYSIS

The authority of a court to review state employee grievances is limited. "The only grounds of appeal of the hearing officer's decision is 'that the determination is contradictory to law.'" Virginia Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002) (quoting former Code § 2.1-116.07:1(B), currently codified at Code § 2.2-3006(B)). We review questions of law, including questions of statutory construction, *de novo*. Louis Latour, Inc. v. Va. Alcoholic Bev. Contr. Bd., 49 Va. App. 758, 766, 645 S.E.2d 318, 322 (2007).

### I. THE CIRCUIT COURT CORRECTLY DECLINED TO REVIEW DHRM'S POLICY INTERPRETATION

Burke first assigns error to the circuit court's conclusion that it had no jurisdiction in policy matters and, therefore, lacked the authority to overrule the decision of the DHRM. We find no error. As we explained in Barton, the General Assembly has adopted a "tripartite review procedure." 39 Va. App. at 445, 573 S.E.2d at 322. Under this procedure, the hearing officer acts as factfinder, DHRM determines compliance with state policy, and courts review whether the grievance determination is contrary to law. Id. This review procedure allows the executive branch latitude to manage and discipline executive branch employees and to develop its own policy and procedures, subject to limited legal constraints. The standard of review for courts is "very narrow" because it "focuses solely on the question whether the hearing officer's decision is

- 4 -

contradictory to any applicable law." Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429, 674 S.E.2d 854, 858 (2009).

The interpretation of DI 201 clearly is a matter of policy rather than a question of law. DI 201 is a component part of "instructions" that were issued by the Commissioner of the Department of Behavioral Health and Developmental Services in order to "establish policies, procedures and responsibilities for reporting, responding to, and investigating allegations of abuse and neglect of individuals receiving services in Department facilities." It is not a regulation found in the Virginia Administrative Code.

By express statutory command, "an appeal from a hearing officer's interpretation of policy goes to the director of the [DHRM], not the circuit court." Commonwealth v. Needham, 55 Va. App. 316, 327-28, 685 S.E.2d 857, 863 (2009) (citing Code § 2.2-3006(A)). See also Quesenberry, 277 Va. at 428-29, 674 S.E.2d at 858. Therefore, under the plain language of the statute and settled precedent, the circuit court correctly concluded that it lacked jurisdiction to review DHRM's policy interpretation.

II. AGENCY COMPLIANCE WITH ITS OWN POLICIES AND PROCEDURES

In her next two assignments of error, Burke contends that the Agency's failure to follow its own procedures compels reversal. First, she presses a broad interpretation of Code § 2.2-3000, noting that under this statute a hearing must be "fair."[4] In her view, the failure of the Agency to follow its own grievance procedures renders the decision below "unfair." Second, she argues that the court erred in failing to find a violation of § 7.2 of the Grievance Procedure Manual. We disagree with both contentions.

---

[4] Code § 2.2-3000 provides, in pertinent part, that "the grievance procedure shall afford an immediate and fair method for the resolution of employment disputes that may arise between state agencies and those employees who have access to the procedure under § 2.2-3001."

- 5 -

First, the broad statement of policy found in Code § 2.2-3000, concerning "fair" hearings, does not constitute an invitation for reviewing courts to police compliance with the procedures found in the Grievance Procedure Manual. Although the Code directs the Department of Employment Dispute Resolution to "develop a grievance procedure," Code § 2.2-3003(A), and provides that "all nonprobationary state employees shall be covered by the grievance procedure established pursuant to this chapter and any regulations adopted pursuant thereto," Code § 2.2-3001(A), the statutory scheme specifically addresses how procedural defects are to be addressed:

> [A] failure of the employee or the agency to comply with a substantial procedural requirement of the grievance procedure without just cause may result in a decision against the noncomplying party on any qualified issue. . . . The Director of the Department of Employment Dispute Resolution shall render all decisions related to procedural compliance, and such decisions shall contain the reasons for such decision and shall be final.

Code § 2.2-3003(G). See also Code § 2.2-1001(5) (providing that the Director of the Department of Employment Dispute Resolution has the power and duty to "[r]ender final decisions, containing the reasons for such decision, on all matters related to procedural compliance with the grievance procedure"). Plainly, the courts are not the proper forum to hear appellant's challenge to the procedures employed by the Agency in handling her grievance. The General Assembly has entrusted a separate component of the executive branch, the Director of the Department of Employment Dispute Resolution, with resolving disputes of procedure that arise at grievance hearings.

Furthermore, judicial review, as noted above, is limited to ensuring that the administrative decision was not "contradictory to law." Code § 2.2-3006(B). The premise of Burke's argument is that the Grievance Procedure Manual is "law." As the Supreme Court explained, the appealing party must "identify [a] constitutional provision, statute, regulation or

judicial decision which the [hearing officer's] decision contradicted." Quesenberry, 277 Va. at 429, 674 S.E.2d at 858 (citations and internal quotation marks omitted). The grievance manual is none of these. It is simply a manual of procedure. Failure to abide by an agency's own policies and procedures does not render that decision "contradictory to law."

Finally, Burke contends that the Grievance Procedure Manual constitutes the "law of this case" because the Department of Employment Dispute Resolution stated in a letter dated December 3, 2010 that the hearing would be "governed by § 5.1-5.9 of the *Grievance Procedure Manual* and the *Rules for Conducting Grievance Hearings* (8/30/2004)." This claim misapprehends the concept of the law of the case.

> "Under [the] law of the case doctrine, a legal decision made at one [stage] of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."

Kondaurov v. Kerdasha, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006) (quoting Virginia Vermiculite, Ltd. v. W.R. Grace & Co.– Conn., 108 F. Supp. 2d 549, 609 (W.D. Va. 2000)). That concept is not applicable here.

### III. IMPACT OF THE AGENCY'S FAILURE TO REQUEST AN ADMINISTRATIVE HEARING OF THE FEBRUARY 7, 2011, HEARING OFFICER'S OPINION

In her final assignment of error, Burke asserts that the Agency's failure to seek a hearing following the hearing officer's decision of February 7, 2011, means that this decision should stand. This assignment of error is procedurally defective on two grounds. First, in her brief, Burke cites to no "law" that was violated. Therefore, under the review procedure that applies to judicial review of grievance hearings, she has failed to "identify [a] constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicts."

Quesenberry, 277 Va. at 429, 674 S.E.2d at 858 (citations and internal quotation marks omitted). This failure is fatal to this assignment of error. Id.

Second, it is well established that a litigant on appeal has the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Under Rule 5A:20(e), a brief must supply, "[w]ith respect to each assignment of error, the standard of review and the argument – including principles of law and the authorities . . . ." In an adversarial system of justice, it is not the role of a court to "search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*). Finding that the failure to comply with Rule 5A:20(e) is significant, we will not consider this assignment of error.[5]

Affirmed.

---

[5] We also note that under Code § 2.2-3006(C), the hearing officer's decision becomes "effective from the latter of the date issued or the date of the conclusion of any administrative review and judicial appeal, and shall be implemented immediately thereafter, unless circumstances beyond the control of the agency delay such implementation." The Agency sought administrative review when it appealed the hearing officer's interpretation of DI 201 to the Director of DHRM and, therefore, administrative review was not concluded. Following its decision, DHRM remanded the matter to the hearing officer, who then implemented the DHRM decision in his reconsideration decision dated March 14, 2011.