COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

UNPUBLISHED

TEESHIA JUSTICE POTTS

MEMORANDUM OPINION[*]

v.      Record No. 1067-20-3                          PER CURIAM
                                                      MARCH 2, 2021

BUCHANAN COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Patrick R. Johnson, Judge

(Joshua R. Evans, on brief), for appellant. Appellant submitting on
brief.

(Russell Vern Presley, II; Kimberly Boyd Hibbitts, Guardian *ad
litem* for the minor children; Street Law Firm, LLP, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Teeshia Potts (mother) appeals the circuit court order terminating her parental rights to four

of her children and approving the foster care goal of adoption. Mother argues that the circuit court

erred when it found that mother, "without good cause, has been unwilling or unable to within a

reasonable period of time not to exceed twelve months from the date the child was placed in foster

care to remedy substantially the conditions which led to or required continuation of the child's

foster care placement." Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Harley D. Justice (father) are the biological parents to K.J., H.J., C.L.J., and C.R.J., who are the subjects of this appeal.[2] Throughout 2015, the family was involved with the Department of Social Services in Davidson County, North Carolina, due to concerns about domestic violence, drug use, and housing conditions. K.J., H.J., and C.L.J. were placed in foster care until the General District Court of Justice in Davidson County, North Carolina ultimately returned custody of the children to mother in February 2016.[3]

In March 2018, mother and her husband, Roger Potts, moved to Virginia with the children. They lived in a one-room efficiency apartment with two animals.[4] On March 16, 2018, the Buchanan County Department of Social Services (the Department) removed the children from mother's care due to allegations of drug use, refusal of drug screens, inadequate housing,

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] At the time of the circuit court hearing, mother had two younger children who were not the subject of the appeal, and she was pregnant.

[3] C.R.J. was born during the pendency of the foster care matter in North Carolina.

[4] Mother subsequently separated from her husband, and he returned to North Carolina.

and unsanitary living conditions.[5]  K.J., H.J., C.L.J., and C.R.J. were six, four, three, and two years old at the time of the removal.

The Buchanan County Juvenile and Domestic Relations District Court (the JDR court) entered emergency and preliminary removal orders.  The JDR court entered dispositional orders after adjudicating that the children were abused or neglected.  Mother did not appeal the dispositional orders.

The Department required mother to obtain and maintain safe housing, obtain employment with sufficient income to support the family, participate in a psychological evaluation and follow all recommendations, complete substance abuse treatment, submit to random drug screens, disclose all prescription medications, participate in parenting classes, visit the children regularly, participate in individual counseling, and cooperate with the Department.  The Department reviewed the requirements with mother and explained the consequences if she did not comply.

On June 2, 2018, mother met with Dr. Bill McFeature for the psychological evaluation. Dr. McFeature noted that mother had a history of opiate abuse, depression, and mood instability. Dr. McFeature diagnosed mother with Bipolar I disorder with recent manic episode and post-traumatic stress disorder.  Dr. McFeature recommended that mother follow up with a psychiatrist for medication management and participate in therapy.  In addition, Dr. McFeature recommended that mother abstain from drug use, receive random drug screens, and participate in substance abuse counseling because she was considered a "high risk for substance abuse disorder."  Dr. McFeature further opined that mother would benefit from parenting classes and a parenting coach.  He recommended supervised visitation for mother and believed that she had

---

[5] Father was incarcerated at the time of the removal and at the time of the circuit court hearing.  His anticipated release date is in 2022.

"the cognitive ability, insight, and noted compassion to care for her children"; however, he expressed concern about her providing parental care if she did not follow his recommendations.

The Department reviewed Dr. McFeature's report with mother and explained that she needed to see a psychiatrist and follow through with medication management. The Department also arranged for a parenting coach for mother and reminded her of the need to participate in individual counseling and substance abuse counseling.

While the children were in foster care, mother was often argumentative and confrontational with the social workers, the CASA worker, the children's guardian *ad litem*, and the service providers. She initially refused to cooperate with signing all necessary waivers and consent forms so that the Department could access her records; she finally signed a release for the Department in April 2019, more than one year after the children entered foster care. Although mother completed the parenting classes, she did not comply with Dr. McFeature's other recommendations. She tested positive for amphetamines and methamphetamines in December 2018, and she did not complete substance abuse counseling.

The Department arranged for supervised visitation between mother and the children. The visits with all the children were often "hectic." Mother did not adequately supervise the children during visits, which led to the children running out of the visitation room. The Department also witnessed mother using inappropriate discipline techniques, such as physically restraining a child on the floor. Generally, mother was not receptive to suggestions during or after visits.

In December 2018, C.R.J. and C.L.J.'s counselor recommended that their visitations with mother stop. In late February or early March 2019, H.J.'s counselor recommended that his visitations with mother be suspended. Mother's visits with K.J. continued.

Because mother had not complied with the Department's requirements, including Dr. McFeature's recommendations, the Department recommended a foster care goal of adoption

- 4 -

for K.J., H.J., C.R.J. and C.L.J.[6]  The JDR court approved the foster care goal of adoption and terminated mother's parental rights.  Mother appealed the JDR court's rulings to the circuit court.

On October 24, 2019, the parties appeared before the circuit court.  The circuit court heard evidence that when the children came into foster care, the Department had to update their immunizations.  C.R.J. and C.L.J. needed eyeglasses, which they received.  C.R.J. had severe constipation that required medical attention and ongoing care from a gastroenterologist.  For approximately the first eight months that they were in foster care, C.R.J. and C.L.J. were insecure about food and tended to overeat.  While in foster care, all four children exhibited "behavioral issues" and participated in counseling.

At the time of the circuit court hearing, the children were doing well in foster care and in prospective adoptive placements.  K.J., H.J., and C.L.J., who were eight, six, and almost five years old, had been removed from their original foster homes but were placed together in a new foster home.  C.R.J., who was four years old, was in the same foster home as when she entered foster care.

The Department also presented evidence that mother had not cooperated fully with the Department, had not completed substance abuse treatment, and had not obtained and maintained adequate housing in a timely manner.  Mother had obtained housing by March 2019, which was "late in the game," according to the Department.  The Department and the CASA worker had some concerns about the safety of the three-bedroom house and questioned whether it would be suitable for mother and the children.  The Department introduced into evidence photographs of mother's house.  The CASA worker visited the home several times between March and October 2019, and she did not see much improvement because the safety concerns remained.  The CASA

---

[6] One of mother's children, whose biological father differed from the four children who are the subjects of this appeal, was placed with a paternal relative.  Mother did not contest the relative placement for this child.

worker expressed concern about mother's lack of stability, her ability to provide "adequate and proper care" for the children, and her mental health. The Department remained especially concerned about mother's "mental health stability" and her ability to care for herself and the children. The Department was not confident that mother could meet the children's needs, including their therapy and medications.

After hearing the evidence and arguments of the parties, the circuit court took the matter under advisement. On April 17, 2020, the circuit court issued a letter opinion terminating mother's parental rights to K.J., H.J., C.L.J., and C.R.J. under Code § 16.1-283(C)(2) and approving the foster care goal of adoption. On June 11, 2020, the circuit court entered an order memorializing its rulings.[7] This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's order terminating her parental rights. She argues that the evidence was "insufficient, as a matter of law, to support the termination of her residual parental rights; specifically that the [circuit court] finding that [mother] was unwilling or unable

---

[7] The circuit court also ordered the termination of father's parental rights; father did not appeal.

within a reasonable period of time to complete services or remedy conditions." Mother emphasizes that Dr. McFeature described mother as being "caring, compassionate, and capable." She also stresses that she had only "one failed drug screen over a period of a year and half of the children being [in] foster care."

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Here, mother failed to comply with the Department's requirements. She failed to obtain and maintain suitable housing for her and the children. Mother also had tested positive for methamphetamines and amphetamines in December 2018, nine months after the children entered foster care. She had not completed substance abuse counseling. Mother refused to cooperate with the Department and sign the necessary waivers and consent forms until April 2019, after the Department sought to change the foster care goal to adoption. It was at that time that mother advised the Department that she was meeting with a psychiatrist, but there was no evidence that she was taking psychotropic medications.

When the circuit court issued its ruling, the children had been in foster care for two years. The Department presented evidence that the children were doing well in foster care, but they had

special needs, which required counseling and other services. Mother had not demonstrated that she was capable of caring for the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the evidence, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2) and finding that termination was in the children's best interests.

Moreover, mother contends that the circuit court's "judgment must be reversed because the foster plan provided to [mother] listed a target date for completion as June 1, 2020." She argues that she "should have had until at least June 1, 2020, . . . before the termination petition was filed by the Department against [her]." Mother admits that she did not raise this argument with the circuit court but asks this Court to consider her argument under the ends of justice exception to Rule 5A:18.

Generally, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett, 62 Va. App. at 315 (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "The ends of justice exception is narrow and is to be used sparingly[.]" Fletcher v. Commonwealth, 72 Va. App. 493, 510 (2020) (quoting Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*)). "In deciding whether the exception should apply, an appellate court must ask two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'"

Id. (quoting Gheorghiu v. Commonwealth, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." Holt, 66 Va. App. at 210 (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514 (2009)).

Although mother claims that a foster care plan allowed her to have until June 1, 2020 to meet the Department's requirements, she does not indicate where such plan can be found in the almost 1,400-page appendix.[8] "[I]t is not the function of this Court to 'search the record for error in order to interpret the appellant's contention and correct deficiencies in a brief.'" Alwan v. Alwan, 70 Va. App. 599, 612 (2019) (quoting West v. West, 59 Va. App. 225, 235 (2011)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'" Id. (quoting Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012)).

The record, however, includes the Department's foster care plans from November 2018, providing June 1, 2019 as a target date for the goals of return home or adoption. The circuit court hearing was held on October 24, 2019. As discussed above, the evidence proved that mother did not comply with the Department's requirements in the foster care plan, and the circuit court did not err in terminating her parental rights and approving the foster care goal of adoption. Accordingly, the ends of justice exception does not apply, and we will not consider this part of mother's argument regarding the target date of the foster care plan.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[8] Rule 5A:20(c) requires an appellant to provide "a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Rule 5A:20(d) requires an opening brief to include a "clear and concise statement of the facts that relate to the assignments of error, with references to the pages of the transcript, written statement, record, or appendix."