COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Raphael and Callins

PETER W. BABER, SOMETIMES KNOWN AS
  PETER BABAR

                                                    MEMORANDUM OPINION[*]
v.         Record No. 1509-22-1                           PER CURIAM
                                                    SEPTEMBER 26, 2023

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                             David W. Lannetti, Judge

            (Cole M. Roberts; Law Office of Eric Korslund, P.L.L.C., on brief),
            for appellant. Appellant submitting on brief.

            (Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
            Attorney General, on brief), for appellee.


        A jury convicted Peter Babar of voluntary manslaughter in the shooting death of Charles

Sharp. Babar asserts that the trial court erred by admitting lay opinion testimony that Babar

appeared in "blurry" homeowner's surveillance footage "running full speed, the presentation level

[sic] pointing something" at the victim. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm the trial court's

judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the morning of August 18, 2020, Abriel Epps drove her brother-in-law, Charles Sparks, in his burgundy Impala to a Norfolk neighborhood after Sparks received a phone call at his home. When Sparks directed Epps to pull over, Donell Small and several men were standing next to a white Hyundai on the opposite side of the street. Small's girlfriend, Krystal Bowers, was sitting in the driver's seat of the Hyundai. Sparks exited the passenger side of the Impala and approached Small in the middle of the street. After Sparks exited, Epps noticed a firearm on the front passenger floorboard.

Less than 30 seconds later, a dark gray Mercedes pulled up and parked behind Small's vehicle. Small's mother, Delphine Simmons, was driving the Mercedes. Epps saw Babar, Small's stepfather, exit the Mercedes and "rush[] towards [Sparks] with a gun." Although blurry, surveillance footage from a home security camera a few houses away depicted a male exiting the Mercedes and running across the street with his arms extended straight out in front of him.

Sparks retreated to the passenger side of his car. Babar grabbed Sparks by the shirt and pointed a gun at him. Small ran to his car, opened the front passenger door, and retrieved a firearm. As Sparks and Babar moved to the back of the Impala, Epps heard a gunshot from behind her. Small, who was standing next to Epps on the driver's side of the Impala, opened fire and shot at Sparks several times. Babar and Small fled on foot down an alley as the Hyundai and Mercedes left the scene.

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Epps helped Sparks into his car and drove him to the hospital. En route to the hospital, Epps called Sparks's wife and screamed, "Some white man just shot your husband!"[2] Sparks died at the hospital. An autopsy revealed that Sparks had four gunshot wounds, and the cause of death was gunshot wounds of the lower extremities.

Officer Cameron Harrell recovered a .45 caliber handgun from the front passenger-side floorboard of the Impala. The rusty gun was not "in a fireable condition" when it was presented for forensic analysis, but it became operable after the slide was manipulated. Through further investigation, the police discovered that the incident had been recorded by a surveillance camera on a home a few houses away. Detective Kyle Austin reviewed the footage, but it was too blurry for him to identify the individuals' faces. But when Small and Babar were arrested on August 19, 2020, the day after the shooting, Small admitted that he and Babar were at the scene. Small told the police that he met Sparks to discuss a dispute over a "PUA card," a COVID-19 unemployment benefits card. Small claimed that Sparks had a firearm and that Small shot "at" Sparks "two to three times in self-defense."

At trial, Epps narrated the video footage of the incident without objection. Epps testified that Babar exited the Mercedes and "chased [Sparks] with a gun towards the passenger side of [Epps's] car."[3] Detective Austin also narrated the video and testified that, when Babar exited the Mercedes and ran towards Sparks, "[y]ou see the passenger running full speed the presentation level [sic] pointing something at the passenger from the Impala." Babar objected that Austin's narration constituted impermissible opinion, stressing "the jury [could] see the video for themselves." The trial court overruled Babar's objection but instructed the jury that the

---

[2] Babar is white; Sparks is black.

[3] The Commonwealth informed the jury in opening statement that the video depicted Babar "in a shooting stance" when he approached Sparks.

testimony was to be taken only as the detective's "opinion as part of his investigation in this case." The trial court admonished the jury further, "Certainly your ultimate determination may be similar or totally different. That's for you to decide, but this is his opinion as part of his investigation in this case." The video was admitted into evidence for the jury to review independently. On cross-examination, Babar presented the video to Austin again and questioned him about the stance adopted by the Mercedes passenger as he approached Sparks. Austin reiterated that the passenger appeared to raise "both arms."

Small testified and claimed that he shot Sparks in self-defense with a .9mm gun after Sparks fired his gun first. Small agreed that, consistent with the video evidence, Babar ran toward Sparks following Babar's arrival; however, Small denied seeing anything in Babar's hands. Defense witnesses Anthony McDowell and Aaron Kennedy testified that they witnessed the incident and stated Babar did not have a gun. They also narrated the video and maintained that it did not depict Babar holding a gun.

At the conclusion of the evidence, the jury found Babar guilty of the lesser-included offense of voluntary manslaughter and acquitted him of conspiracy to commit murder and use of a firearm in the commission of a felony. This appeal follows.

ANALYSIS

Although Babar assigns error to the trial court's evidentiary ruling admitting Detective Austin's "opinion" testimony, his opening brief does not argue that the trial court abused its discretion by admitting the testimony and instead focuses solely on the sufficiency of the evidence to sustain his conviction.[4] An opening brief must contain "[t]he standard of review and the

---

[4] As Babar's assignments of error do not include a sufficiency challenge, we may not consider his sufficiency of the evidence arguments. *See Banks v. Commonwealth,* 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant." (citations omitted)).

argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "[I]t is not the function of this Court to 'search the record for error in order to interpret the appellant's contention and correct deficiencies in a brief.'" *West v. West*, 59 Va. App. 225, 235 (2011) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [an appellant's] claims.'" *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (en banc)). To the contrary, if an appellant believes "that the trial court erred, Rule 5A:20(e) require[s] him 'to present that error to us with legal authority to support [his] contention.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)).

Babar's opening brief fails to comply with Rule 5A:20 because it does not cite the standard of review for evidentiary rulings or any legal authority supporting his contention that the trial court erred by admitting Detective Austin's opinion, as alleged in his sole assignment of error. Babar's failure to comply with Rule 5A:20 is significant, so we will not consider his assignment of error.[5] *See Parks v. Parks*, 52 Va. App. 663, 664 (2008). We therefore affirm the trial court's judgment.

---

[5] Even if we addressed the merits of the evidentiary issue, Detective Austin never testified that he observed Babar holding a gun in the video. Instead, he testified only that Babar was "pointing something" at Sparks with his arms at "presentation level," testimony that was corroborated by the video. Babar elicited nearly identical testimony from Detective Austin on cross-examination when he asked the detective about Babar's stance. Finally, Epps testified that Babar was holding a gun as he ran toward Sparks. Thus, even assuming the trial court erred by admitting Detective Austin's testimony, the error was harmless. *See Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) ("Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018))); *Greenway v. Commonwealth*, 254 Va. 147, 154 (1997) ("Improper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted."). Moreover, to the extent that Detective Austin's testimony could be interpreted to imply the possession of a gun, the trial court provided the jury with a limiting instruction cautioning that its determination about the content of

CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*

---

the video might be "totally different."  In the absence of evidence to the contrary, we presume that the jury followed this instruction.  *Davison v. Commonwealth*, 69 Va. App. 321, 331 (2018); *Riner v. Commonwealth*, 268 Va. 296, 317 (2004).  As the jury ultimately acquitted Babar of use of a firearm in the commission of a felony, we can safely conclude that the jury did not ignore the instruction.