COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chaney, Callins and White

HO-WON JEONG

                                                              MEMORANDUM OPINION*
v.        Record No. 1797-22-4                                      PER CURIAM
                                                               NOVEMBER 28, 2023
GEORGE MASON UNIVERSITY


                        FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                    Manuel A. Capsalis, Judge

                (Ho-Won Jeong, on briefs), *pro se*.

                (David Garnett Drummey, Senior Assistant Attorney General; Eli S.
                Schlam, Assistant Attorney General, on brief), for appellee.


        Ho-Won Jeong, *pro se*, challenges the circuit court's order denying his motion to compel a

subpoena duces tecum directed to George Mason University ("the University"). Jeong contends

that the circuit court abused its discretion (1) in finding that the University had complied with an

earlier order, (2) in excluding expert testimony, (3) in refusing to admit certain exhibits, (4) in

preventing testimony of the University's in-house counsel, and (5) in denying his request for in

camera review of documents withheld or redacted under claims of the attorney-client privilege or

attorney work-product doctrine. Jeong also contends that the circuit court judge was required to

recuse himself. After examining the briefs and record, the panel holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

Finding no abuse of discretion, we affirm.

---

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

In 2018, Jeong filed a complaint in the United States District Court for the Eastern District of Virginia after being terminated from a tenured professorship at George Mason University in 2017; that complaint was dismissed in 2018.[1] In June 2021, Jeong, *pro se*, filed a complaint in the Superior Court of the District of Columbia (the D.C. court) alleging legal malpractice by his former counsel that caused the dismissal by the United States District Court for the Eastern District of Virginia. In March 2022, Jeong obtained a subpoena duces tecum directed to the University under the Uniform Interstate Depositions and Discovery Act, Code §§ 8.01-412.8 through -412.15.

On June 3, 2022, the Circuit Court of Fairfax County partially quashed the subpoena.[2] On June 22, 2022, the University delivered to Jeong documents responsive to the remaining parts of the subpoena and completed its document production. The University also produced a privilege log with the date, the sender and recipient, subject, and a brief description for each document withheld under a claim of the attorney-client privilege or attorney work-product doctrine.[3] The University produced a redaction log that described each redacted document and specified the basis for the redaction. In follow-up correspondence, the University provided Jeong with a chart identifying how each produced document responded to the subpoena request.[4]

---

[1] Jeong previously filed a complaint in 2016 in the United States District Court for the Eastern District of Virginia that was dismissed in January 2017.

[2] The Honorable Brett A. Kassabian entered the June 3, 2022 order.

[3] A representative entry specified that a January 19, 2017 email from David Drummey to Brian Walther, with a subject of "Re: revised letter," had been withheld under the attorney-client privilege and work-product doctrine and described the document as an "[e]mail regarding post tenure review decision reflecting legal advice provided to client and attorney work product."

[4] From the chart, it appears that the University produced more than 1,300 pages. Still, Jeong included only a few of the produced documents as exhibits to his filings in the circuit court.

In September 2022, Jeong moved to enforce compliance with the June 3, 2022 order, which the circuit court treated as a motion to compel discovery.[5] Jeong asserted that the University had "purposefully and negligently withheld many responsive communications and documents." Jeong also argued that the University improperly withheld documents under claims of attorney-client privilege or attorney work-product doctrine, and he listed several documents included in the University's privilege log that he believed should have been produced. Throughout his motion and several exhibits, many of which contained further argument, Jeong repeatedly asserted that the University "should" or "must have" had possession of certain documents.[6]

The University opposed the motion, and Jeong replied. At the evidentiary hearing, the circuit court found that Jeong's filing was "voluminous" and he had not received leave of court to exceed the court's five-page limit or to file a reply brief. The circuit court initially ruled that it would consider only Jeong's motion and that he needed leave of court to file the exhibits and reply brief. Later, however, the circuit court stated that "even though [Jeong] did not comply with" the circuit court's rules, it had reviewed everything that he had filed.

At the hearing, Jeong offered Rosanna Lopez, a licensed attorney, as an expert witness on discovery matters.[7] The University objected and argued that expert testimony was unnecessary because "discovery matters" were "squarely within" the circuit court's expertise. The circuit

---

[5] Only two pages of the motion appear in the record.

[6] For example, he maintained that the University "should have collected a plethora of information and materials about interactions within the [tenure] review committee as well as its contact with other university employees" and the University's in-house counsel "should have their own account, summaries, notes or memos which represent their knowledge" of the committee's "impressions and opinions."

[7] Lopez also provided an expert opinion for Jeong in the underlying legal malpractice litigation.

court then denied Jeong's request to qualify Lopez as an expert witness because it did not "need an expert opinion to determine whether [the University] complied [with] or to interpret" the June 3, 2022 order.

Jeong next called James Pfiffner, a professor emeritus at the University and a member of Jeong's post-tenure review committee. Pfiffner testified that he had given all of his emails and documents to the University counsel. Renate Guilford, the University's provost and vice president for academic administration at the time of the hearing, testified for Jeong that she had not been involved in the process of the post-tenure review, but any documents or communications she had would have been given to the University counsel. Sharon Cullen, the director of presidential administration, testified that the University counsel had asked for all documentation within the president's office and she and others in the office "did a thorough search" and provided all the documents to the University counsel.

Jeong attempted to question David Drummey, the University's in-house counsel and one of its counsels of record at the hearing. Jeong proffered that Drummey had critical information, which no one else had, about Jeong's post-tenure review and termination. The circuit court found that Jeong's proffer went "to the very heart" of attorney-client privilege and the attorney work-product doctrine and ruled that Jeong could not question Drummey regarding his work as an attorney in this case.

Jeong offered into evidence documents that had been attached to his motion as Exhibits 3, 8, 9, and 10. The University objected to their admission, describing them as an "additional" argument, an "affidavit," and a "chronology" Jeong had created.

The first paragraph of Exhibit 3 asserted that the University "withheld or completely blackened or heavily redacted all the substantive email communications and documents" that Jeong needed "to prove that he was terminated for fabricated reasons manufactured by a

fraudulent post[-]tenure review process." (Emphasis omitted). It contained Jeong's assertions that the University did not produce "any information related to the [post-tenure review] committee's own discussion regarding the grievance committee report sent to them by Jeong" or "any committee emails with the university in-house counsel," over which the University asserted "a privilege claim." In Exhibit 3, Jeong also asserted that the University "should have collected a plethora of information and materials about interactions within the review committee as well as its contact with other university employees, for instance, between December 2016-January 2017 and May 2018."

Exhibit 8 asserted that it "illustrates trickeries and other deceptive tactics" the University used "to defy" the June 3, 2022 order. The rest of the exhibit contained statements by Jeong giving examples of perceived deficiencies in the University's production. Certain headings included "Repetitions of Non-substantive Documents," "Repeated Production of Official Documents," and "Production of Documents only in [Jeong]'s Possession."

Exhibit 9 stated that it "incorporates communications either produced" by the University or in Jeong's possession. The exhibit depicted "why [the University] should produce all communications either redacted or denied by the university in-house counsel with the claim of privilege." The rest of the document contained excerpts quoted from various emails produced by the University to Jeong where Jeong italicized and bolded for emphasis and added commentary about certain emails.

The first 21 pages of Exhibit 10 contained Jeong's statement of "issues, facts and evidence that clearly show how [the University] has refused to comply with" the June 3, 2022 order. The next 32 pages, labeled Exhibit 10A, contained excerpts from a hearing transcript in the 2018 litigation, briefs filed by the University in that litigation, and Jeong's comments about

the transcript and briefs. But many of Jeong's statements related to his termination from the University, not its production of documents.

The University again objected to their admission, asserting that they were "hearsay" and "essentially [Jeong's] argument." The University also objected because the documents contained "a lot of speculation" about what the University knew to be true. The circuit court asked Jeong if he had any other evidence in support of his motion, and Jeong replied that he did not. The circuit court found that the exhibits were, "in essence, briefs," and did not admit them into evidence.

During argument, the University maintained that it conducted an extensive search by identifying "the relative custodians" of potentially-responsive documents and by requesting documents from various departments and offices within the University. The University's counsel reviewed the collected documents and produced each document that responded to Jeong's subpoena. Counsel for the University represented to the circuit court that there were no documents that the University had identified as responsive that were not produced or withheld under a claim of privilege and appropriately noted on a log.

After argument by Jeong and the University's counsel, the circuit court found that Jeong's witnesses testified that "they produced all documentation," and gave Jeong an opportunity to identify specific documents that the University had not produced. Jeong did not directly respond but repeated some of his previous arguments before asking the circuit court to review in camera the documents over which the University had claimed privilege. Jeong conceded, however, that he did not have "direct evidence" that the University had not complied with the subpoena. The circuit court stated that Jeong's filings had been "reviewed extensively." The circuit court also stated that it had given Jeong "extra opportunities to argue [his] case, including affidavits and other documents that are, in essence, additional argument" beyond his motion.

After all argument, the circuit court found that the evidence presented did not demonstrate that the University had "failed to appropriately comply with the documents subpoena." In fact, the testimony of Jeong's witnesses did not even "suggest that there was anything that [the University] had failed to do in compliance." The circuit court emphasized that it had reviewed all the documents Jeong submitted, including those filed without leave of court. The circuit court also found that nothing showed that the University improperly claimed attorney-client privilege or attorney work-product doctrine protection. The circuit court therefore found that the University had complied with the subpoena and the June 3, 2022 order. Accordingly, the circuit court denied the motion by order entered October 24, 2022. Jeong appeals.

STANDARD OF REVIEW

"Appellate courts generally review a trial court's ruling on the 'grant or denial of discovery requests under an abuse of discretion standard.'" *Patel v. Rabinowitz ex rel. Lakhani Assocs., LLC*, 75 Va. App. 663, 669-70 (2022) (quoting *Temple v. Mary Wash. Hosp., Inc.*, 288 Va. 134, 139 (2014)). We also apply an abuse of discretion standard to a trial court's evidentiary rulings, including its "decision to admit or exclude expert testimony." *Arch Ins. Co. v. FVCbank*, 301 Va. 503, 515 (2022) (quoting *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 575 (2011)).

A trial court can abuse its discretion in three principal ways: when it does not consider "a relevant factor that should have been given significant weight"; when it considers and gives "significant weight" to "an irrelevant or improper factor"; and when it considers "all proper factors, and no improper ones," but "in weighing those factors, commits a clear error of judgment." *Da'mes v. Da'mes*, 74 Va. App. 138, 150 (2022) (quoting *Everett v. Tawes*, 298 Va. 25, 40 (2019)). "Moreover, a court 'by definition abuses its discretion when it makes an error of

- 7 -

law.'" *Arch Ins. Co.*, 301 Va. at 515 (quoting *Helmick Fam. Farm, LLC v. Comm'r of Highways*, 297 Va. 777, 794 (2019)). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Stark v. Dinarany*, 73 Va. App. 733, 746 (2021) (quoting *Galiotos v. Galiotos*, 300 Va. 1, 11 (2021)).

ANALYSIS

I. Any error in the circuit court's ruling that it would not "hear" Jeong's reply brief was harmless.

Jeong argues that the circuit court abused its discretion by "invok[ing] . . . the [circuit] court's rules" to justify "refus[ing] to consider" his reply brief. Jeong contends that the University referred to the reply brief, thus making the brief "part of the proceeding," and that he was unfamiliar with the "complex" local rules that required him to obtain leave of court. (Emphasis omitted). Jeong also argues that his reply brief was necessary because of arguments the University raised in its brief in opposition to his motion.

Assuming without deciding that the circuit court erred in ruling that it would consider only Jeong's motion,[8] we find that any error was harmless. It "plainly appears from the record" that the parties "had a fair trial on the merits and substantial justice has been reached." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (quoting Code § 8.01-678). Applying this standard, a "non-constitutional error is harmless 'if, when all is said and done, the error did not influence the [factfinder], or had but slight effect.'" *Spruill v. Garcia*, 298 Va. 120, 127-28 (2019) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (per curiam)). Despite the circuit court's ruling that it would not consider Jeong's reply brief, the record demonstrates that the circuit court

___

[8] The doctrine of judicial restraint directs that we "decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Therefore, we do not address the circuit court's ruling that Jeong had to obtain leave of court to file his reply brief and exceed the standard page limits.

in fact reviewed and considered everything that he had filed, including the reply brief. Therefore, any error by the circuit court in ruling that it would not consider Jeong's reply brief was harmless.

II. The circuit court did not abuse its discretion by declining to qualify Lopez as an expert witness.

Jeong argues that the circuit court misunderstood the subject on which he wanted to have Lopez testify and, even after he "corrected" its "misunderstanding," "still insisted" that Jeong was attempting to have Lopez "interpret" the June 3, 2022 order. (Emphasis omitted). Thus, Jeong argues, the circuit court erroneously precluded Lopez from testifying as an expert witness "despite [her intended testimony] being both material and relevant."

"[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Code § 8.01-401.3(A); *see* Va. R. Evid. 2:702(a)(i). But no expert witness may "express any opinion which constitutes a conclusion of law." Code § 8.01-401.3(B); *see* Va. R. Evid. 2:704(a).

Here, Jeong affirmed that the circuit court was "absolutely correct" in its understanding that he sought to qualify Lopez as an expert "solely on the issue of [the University]'s compliance" with the June 3, 2022 order. But "it is a well-established principle in our jurisprudence that circuit courts have the authority to interpret their own orders." *Upper Occoquan Sewage Auth. v. Blake Const. Co., Inc./Poole & Kent*, 275 Va. 41, 61 (2008).

The circuit court had to consider whether the University had complied with the June 3, 2022 order, and the circuit court did not abuse its discretion in finding that Lopez's testimony would not assist it in "understand[ing] the evidence" or "determin[ing] a fact in issue." Code § 8.01-401.3(A); *see* Va. R. Evid. 2:702(a)(i). The circuit court did not need expert testimony to

assess whether the University had complied with the obligations imposed by the June 3, 2022 order. Indeed, the circuit court could not have allowed Lopez to testify whether the University had complied with the June 3, 2022, order as her opinion on that issue would have been an impermissible "conclusion of law." Code § 8.01-401.3(B); *see* Va. R. Evid. 2:704(a). Therefore, the circuit court did not abuse its discretion by declining to qualify Lopez as an expert witness.

III. The circuit court did not abuse its discretion by refusing to admit Exhibits 3, 8, 9, 10, and 10A.

Jeong argues that the circuit court "erroneously denied" evidentiary value of certain exhibits. Jeong contends that the exhibits presented facts demonstrating that the University's production was "inadequate" and that the circuit court did not "properly review" the exhibits, "refused to consider" them, and improperly excluded them from evidence. (Emphasis omitted).

Hearsay "is not admissible" unless an exception applies. Va. R. Evid. 2:802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801. Additionally, "a hearsay declaration containing a statement of opinion must, to be admissible, satisfy the requirements of both the rule prohibiting admission of hearsay and the rules restricting the expression of opinion by witnesses." *Gelber v. Glock*, 293 Va. 497, 513 (2017) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 15-1[d], at 905 (7th ed. 2012)).

We assume without deciding that Jeong's two assignments of error dealing with the exhibits fairly encompass his argument that the circuit court erroneously excluded them from evidence. The circuit court's description of the exhibits as "essentially, briefs [or] arguments" is fitting. The record reflects that the proffered exhibits do not contain evidence. Instead, they contain Jeong's assertions, arguments, and statements of belief.

Any factual statements within the exhibits were inadmissible hearsay because Jeong offered them for their truth and did not identify any exception rendering them admissible as required by Rule 2:802. *See also Atkins v. Commonwealth*, 68 Va. App. 1, 7-8 (2017).

Any opinions within the exhibits also were inadmissible. *Gelber*, 293 Va. at 513. Finally, arguments are not evidence. *See Comm'r of Highways v. Karverly, Inc.*, 295 Va. 380, 393 n.19 (2018) (citing Friend & Sinclair, *supra*, § 1-4[i], at 32); *see also Goldman v. Commonwealth*, 74 Va. App. 556, 566 (2022) (noting "[t]here is no indication that the Commonwealth intended this statement [that had not been introduced into evidence] as evidence, nor could the Commonwealth properly do so since the statement was made by the prosecutor and not by a witness"). The circuit court properly ruled that Jeong's exhibits, which contained arguments, were inadmissible. Accordingly, we find no error.

IV. The circuit court did not abuse its discretion by denying in camera review or refusing to allow Jeong to question the University's counsel.

Jeong argues that the circuit court improperly denied his request for an in camera review of the documents that the University withheld or redacted. Jeong contends that the University "failed to provide adequate information needed to determine how *each specific communication* is privileged." Jeong points to five emails and an attachment, dated August 1 and August 5, 2016, withheld by the University that he believes are representative of the University's failure to prove that the privilege applied. He contends, "based on [his] analysis of related communications, that the discussion [in the emails] focuses on a process to produce the committee's initial report." Yet, he argues, the privilege log "simply" described each email as seeking "legal advice regarding post-tenure review" and the document was a draft "document provided to counsel for legal review and advice." Jeong contends that these log entries do not provide "any information

whatsoever."[9]  He claims that the circuit court "simply chose to accept" the "bald assertions" by the University's counsel at the hearing without the University "having introduced any evidence to support its claims," and asserts that his evidence gave him a "prima facie entitlement" to an in camera review.  (Emphasis omitted).  Jeong also challenges the circuit court's ruling preventing him from questioning Drummey, the University's in-house counsel and a counsel of record at the hearing and contends that he intended to ask Drummey factual questions about the "inapplicability of attorney-client privilege and work product."  (Emphasis omitted).

Under Virginia law, "[c]onfidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment 'are privileged from disclosure, even for the purpose of administering justice.'"  *Castillo v. Commonwealth*, 70 Va. App. 394, 429 (2019) (alteration in original) (quoting *Commonwealth v. Edwards*, 235 Va. 499, 508-09 (1988)).  "The privilege attaches . . . even if the document does not contain, or is not accompanied by, a written request for legal advice, if the proponent of the privilege sustains its burden of proof to show that the document was prepared" to receive "legal advice on its contents."  *Va. Elec. and Power Co. v. Westmoreland-LG & E Partners*, 259 Va. 319, 326 (2000).  Moreover, "[c]ommunications between officers and employees of the same entity relayed to corporate counsel for the purpose of obtaining legal advice are entitled to the

---

[9] Jeong also asserts that the "record shows that" the University often "arbitrarily redacted" emails "despite the absence of any possible legal advice to be relayed" and that the "unredacted part of the same communications" do not demonstrate "any need for legal advice" or "indicate[] the actual existence of privileged legal content."  (Emphasis omitted).  Yet, Jeong does not identify any email he believes the University improperly redacted.  Jeong similarly argues the necessity of legal advice for various university personnel, and challenges again unspecified emails as having been improperly withheld or redacted.

It is not "this Court's 'function to comb through the record . . . to ferret-out for ourselves the validity of [appellant's] claims.'"  *Alwan v. Alwan*, 70 Va. App. 599, 612 (2019) (alterations in original) (quoting *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012)).  Jeong has not identified the documents he believes were improperly withheld under a claim of privilege or work-product doctrine and, therefore, we do not consider these arguments.

- 12 -

attorney-client privilege." *Id.* A party asserting the privilege "has the burden to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived." *Castillo*, 70 Va. App. at 429. If a party withholds information under the attorney-client relationship, the party must expressly claim privilege and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Rule 4:1(b)(6)(i).

Additionally, Rule 4:1(b)(3) shields from disclosure otherwise discoverable documents that were "prepared in anticipation of litigation or for trial" unless the requesting party shows "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Even then, however, a trial court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 4:1(b)(3).

The University expressly asserted the privilege and produced privilege and redaction logs that followed the applicable rule. *See* Rule 4:1(b)(6)(i). Those logs detailed the sender, recipient, date, subject line, and a description of each document withheld or redacted, sufficient to allow Jeong and the circuit court to assess whether the privilege or doctrine applied to the withheld information and whether the privilege had been waived. *See Banks v. Mario Indus. of Va., Inc.*, 274 Va. 438, 454 (2007) (holding that an employee waived attorney-client privilege for a document created on his employer's computer where he had "no expectation of privacy"). The record demonstrates that the circuit court did not "simply . . . accept" the "bald assertions" of the University's counsel at argument that it had not improperly withheld otherwise-discoverable information by asserting the attorney-client privilege or attorney work-product doctrine. Instead,

the circuit court examined the privilege and redaction logs and considered the arguments and evidence presented at the hearing.  It then found that the University had met its burden of establishing that the attorney-client relationship existed.  Furthermore, the circuit court found that the privilege or doctrine applied to each document at issue, and the University had not waived the privilege or protection of the doctrine.

Finally, the record demonstrates that Drummey was counsel of record for the University at the hearing and an in-house counsel both during the events relevant to the underlying litigation and during its production of documents to Jeong under the subpoena duces tecum and June 3, 2022 order.  The circuit court gave Jeong an opportunity to explain what non-privileged information Drummey might be able to provide.  But Jeong merely stated his belief that Drummey had "information about [Jeong]'s post-tenure review and termination" and that various information he believed could be revealed was "critical" to his ability to prove his malpractice case.  The circuit court properly found that the University proved that the attorney-client privilege and work-product doctrine as it covered Drummey's emails.

>    V.  The circuit court did not abuse its discretion by denying Jeong's motion and finding that the University had complied with the June 3, 2022 order.

Finally, Jeong argues that the circuit court abused its discretion by ruling that the University had complied with the subpoena and June 3, 2022 order.  Jeong contends that the circuit court "failed to properly consider or examine all the relevant facts and evidence," relied on the University's arguments rather than the examination of evidence, and wrongly decided that the University had complied with the June 3, 2022 order.

Jeong presented the circuit court with testimony from three factual witnesses: James Pfiffner, professor emeritus and member of the post-tenure review committee; Renate Guilford, provost and vice president for academic administration; and Sharon Cullen, director of presidential administration.  Pfiffner testified that he "searched" his work computer and files and

- 14 -

provided "all" the "emails and documents" he found to the University counsel. Guilford testified

that "any documents" or "communications" she had "would have been given to" the University

counsel, even though she had not been "involved in the process" of Jeong's post-tenure review.

Cullen testified that she and others in the president's office "did a thorough search" and provided

all relevant documents to the University counsel. Jeong presented no testimony or documentary

evidence that the University had, without claiming attorney-client privilege as indicated on a

privilege log, improperly withheld any documents that responded to the subpoena. Likewise, he

presented no testimony or documentary evidence that the University had withheld or redacted

documents under an improper claim of attorney-client privilege or attorney work-product

doctrine.

Given the evidence and arguments presented to the circuit court, we cannot say that the

circuit court abused its discretion by finding that the University had complied with the June 3,

2022 order and denying Jeong's motion to compel. *See Stark*, 73 Va. App. at 745-46.

VI. The circuit court judge did not abuse his discretion by not recusing himself sua sponte.

Jeong argues that the circuit court judge should have recused himself because he had a

"paid employment relationship" as an "adjunct professor" at the University and had served on a

task force of the University's law school. (Emphasis omitted). Jeong asserts that the circuit

court judge was not assigned until the morning of the motion hearing and therefore that Jeong

did not have an "opportunity" to move for recusal.[10] He contends that the circuit court judge

---

[10] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

should have disclosed his "professional ties" with the University at the beginning of the hearing "so that Jeong would have had an opportunity to leave an objection on the record."

We also apply an abuse of discretion standard when reviewing a trial court's recusal decision. *Prieto v. Commonwealth*, 283 Va. 149, 163 (2012). "A judge must recuse . . . in a proceeding in which the judge's impartiality might reasonably be questioned." Canon of Judicial Conduct 1(D)(1). As relevant here, a judge must recuse himself if he is aware of "a personal bias or prejudice concerning an issue, a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Canon of Judicial Conduct 1(D)(1)(a). Also, a judge must recuse himself if he knows that, "individually or as a fiduciary," he "has an economic interest in the subject matter in controversy or in a party to the proceeding, or has more than a *de minimis* interest that could be substantially affected by the proceeding." Canon of Judicial Conduct 1(D)(1)(f). Finally, a judge must recuse himself if he is "an officer, director, or trustee of a party." Canon of Judicial Conduct 1(D)(1)(g)(i).

"The burden of proving a judge's bias or prejudice lies with the party seeking recusal." *Prieto*, 283 Va. at 163. Further, a "purported violation of the Canons alone is not enough to mandate reversal." *Commonwealth v. Jackson*, 267 Va. 226, 229 (2004). Instead, "[i]n the absence of proof of actual bias, recusal is properly within the discretion of the trial judge." *Id.*

Here, Jeong has not demonstrated that the circuit court judge exhibited bias or prejudice. To the contrary, the record demonstrates that the circuit court judge afforded Jeong "extra opportunities" to argue his motion, extended him leeway in questioning witnesses, and otherwise treated him impartially and respectfully. Nor does the record demonstrate that the circuit court judge had any "economic interest in the subject matter in controversy or in a party to the proceeding . . . more than a *de minimis* interest that could be substantially affected by the proceeding," or was "an officer, director, or trustee of a party." Canon of Judicial Conduct

1(D)(1)(f), (g).  Therefore, whether recusal was appropriate lay within the circuit court's discretion.  Assuming without deciding that Jeong invoked the "good cause" exception to Rule 5A:18, we hold that the circuit court judge did not abuse his discretion by failing to recuse himself sua sponte or disclose the adjunct professorship.

## CONCLUSION

The record demonstrates that the circuit court considered the evidence and arguments before it and properly exercised its discretion in each of the challenged rulings.  Because the record supports the circuit court's rulings, therefore we affirm its judgment.[11]

*Affirmed.*

---

[11] Our disposition of the appeal moots Jeong's motion, filed April 14, 2023, asking that this Court provide him an estimated time frame for deciding his appeal and, therefore, we do not address it.