COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


THOMAS EDWARD CLARK

                                                    OPINION BY
v.        Record No. 0620-22-2           JUDGE WILLIAM G. PETTY
                                                    OCTOBER 17, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Dennis J. McLoughlin, Jr. (McLoughlin Law PLC, on briefs), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Thomas Edward Clark of first-degree murder, rape, and abduction with

intent to defile. On appeal, Clark challenges the sufficiency of the evidence to sustain his

convictions. Additionally, he contends that the trial court erred by (1) admitting evidence that

was not disclosed timely, (2) allowing mid-trial amendments to the indictments, and (3) refusing

to set aside the jury's verdicts and grant a new trial based on juror misconduct. For the following

reasons, we affirm.

                                    BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

## I. The Offenses

S.F., a mother and grandmother, lived alone in her own home in a quiet neighborhood south of the James River in the City of Richmond. On May 9, 2019, she was scheduled to fly to Florida to visit her mother. When she failed to arrive and her family could not contact her, her nephew called the Richmond police department and requested that they check on her. Around 7:15 p.m. that evening, two City of Richmond police officers went to S.F.'s home to perform a "welfare check." The officers entered the home through the unlocked front door and found S.F.'s body submerged in water in her bedroom bathtub. Cold water was running from the spigot onto S.F.'s face. S.F.'s legs were splayed open and her shirt was pushed up; her pants were "inside out" and there were stains on the crotch of her underwear. S.F.'s right arm was behind her back, there were "ligature marks" around both her wrists, and she had abrasions on her neck.

A knife, glove, bandana, and an "iPhone cord" were in a "pile" on the bathroom counter. The items were wet, and there were bloodstains on the knife, glove, and bandana. The iPhone cord had been cut and tied into a loop that matched a "piece of white cord" found underneath S.F.'s body. Police prepared a PERK[1] and collected samples from bloodstains on the doorframe of S.F.'s bedroom and on the comforter and pillow on her bed. Police also collected the knife, glove, bandana, and iPhone cord pieces in a bag. Officers seized S.F.'s iPhone and laptop that were in the kitchen. There were no signs of forced entry into the home or that anything had been stolen.

---

[1] "PERK" is an acronym for "Physical Evidence Recovery Kit." DNA samples from S.F.'s mouth, fingernails, anorectal region, and vaginal area comprised the PERK.

Around 2:30 a.m. the next morning, the medical examiner, Dr. Kristy Waite, M.D., conducted an autopsy and determined that S.F. died from asphyxia by strangulation. Her time of death was between 2:30 a.m. on May 8, 2019, and 6:30 p.m. on May 9, 2019. Dr. Waite explained that, during the autopsy, S.F.'s body was in a "completely fixed" state of "rigor mortis," which typically occurs "8 to 12 hours" after death and can persist for "24 to 48 hours." S.F. did not have any injuries in her "vaginal area" but blood vessels in S.F.'s eyes and face were ruptured and she had severe neck and spinal injuries, which Dr. Waite opined were consistent with strangulation.

During their investigation, police learned that Clark worked for a landscaping contractor S.F. had hired to stain her deck in mid-April. S.F. had been dissatisfied with the work, so Clark and another employee returned to her home around April 29, 2019, to finish the job. Clark lived with his girlfriend and friend, Seth Noller, in a residence that was about a twelve-minute drive north of S.F.'s home.

On May 14, 2019, Richmond Police Detective James Baynes conducted a video-recorded interview of Clark at the police station. Clark claimed that when he returned to complete work on S.F.'s deck, she had let him inside her house to use the bathroom and get some water. Detective Baynes showed Clark a photograph of the bandana found in S.F.'s bathroom, and Clark admitted that it resembled one that belonged to him. During a second video-recorded interview two days later, Clark claimed that it would be "impossible" for his DNA to be inside S.F. because he did not "have to take anything from a woman" and he only had sex with his girlfriend. Clark maintained that he had not returned to S.F.'s home since completing work on her deck and challenged the detective to "check [his cell] phone" to prove it. Clark said he always carried his cell phone except when he allowed Noller to use it at his house. Clark provided a DNA sample and his cell phone to police.

Forensic testing established that Clark could not be eliminated as a contributor to DNA profiles developed from sperm fractions found on the crotch of the underpants retrieved from S.F.'s body and from samples collected from inside her vagina. A forensic examiner determined that "the probability of randomly selecting an unrelated individual with a DNA profile matching th[ose] developed from the sperm fraction[s]" was "1 in greater than 7.2 billion (which is approximately the world population) in the Caucasian, African American, and Hispanic populations." Moreover, there was "no indication of an additional contributor" to the DNA profile developed from the sperm faction found inside S.F.'s vagina.[2]

Clark's DNA was also identified on the bloodstains on the handle of the knife, the glove, and the bandana found in S.F.'s bathroom. Additionally, S.F.'s DNA was on bloodstains on the blade of the knife, the doorframe of her bedroom, and the comforter and pillow on her bed.[3]

Data from Clark's cell phone established that around 6:20 p.m. and 6:24 p.m. on May 8, 2022, his email account was used to search for pornographic websites on his phone. From 6:24 p.m. until 7:52 p.m., Noller's email account was used to search the internet on Clark's phone. Around 7:52 p.m., Clark's cell phone called his employer.

Data from S.F.'s cell phone, which was password-protected, established that the last time someone had "unlocked" it was between 6:49 p.m. and 6:51 p.m. on May 8, 2019. Thereafter, numerous text messages and calls to S.F. went unanswered. Police also searched S.F.'s laptop and concluded that no one had accessed it since 6:55 p.m. on May 8, 2019.

---

[2] A forensic examiner testified at trial that the presence of sperm usually is detectable for about five days after it is deposited.

[3] Forensic examiners determined during their investigation that Clark's DNA may have transferred from the bandana onto the knife handle when police collected them because it is possible for DNA to transfer from one object to another.

- 4 -

During phone calls with his ex-wife while incarcerated before trial, Clark claimed that police could not have discovered his DNA at the crime scene because S.F. had been "soaked in hot water." Detective Baynes testified at trial that he did not disclose the "temperature of the water that [S.F.] was found in" to Clark when he interviewed him.

## II. Material Proceedings Below

On October 7, 2019, a grand jury indicted Clark for first-degree murder, rape, and abduction with intent to defile.

### A. Pre-Trial Discovery

Before trial, Clark moved for discovery under Rule 3A:11, "the Due Process Clause of the Fifth Amendment of the United States Constitution," and "Article 1, §§ 8 and 11" of the Virginia Constitution. The court ordered the Commonwealth to provide discovery to defense counsel "pursuant to Rule 3A:11 and the case authorities." The order required Clark to provide any notice of alibi to the Commonwealth by May 15, 2020, but did not specify any other deadlines.

On February 7, 2020, and May 27, 2020, Clark signed documents acknowledging that he had received discovery responses from the Commonwealth, including his and S.F.'s cell phone records. Clark did not file any supplemental discovery motions or move for a bill of particulars. On November 15, 2021, the first day of Clark's jury trial, he filed a notice of alibi that "at the time of the charged offenses" he was driving in Henrico County between the 5800 and 8000 blocks of West Broad Street.

### B. Trial

#### 1. FBI Special Agent Jeremy D'Errico's Expert Testimony and Report

On the evening before the second day of Clark's jury trial, FBI Special Agent Jeremy D'Errico, an expert in historical cell site analysis, analyzed S.F.'s and Clark's cell phone records

to determine which "cell sites" their cell phones had used on May 9, 2019; he then used that information to estimate the phones' locations. Agent D'Errico concluded that Clark's cell phone used a cell tower near S.F.'s home seven times between 3:21 p.m. and 4:50 p.m. on May 9, 2019, and S.F.'s phone used the same tower at 3:48 p.m. and 5:18 p.m. that day. He produced an 18-page report containing a summary of his expert opinion, along with maps charting the estimated locations of the cell phones.

The next day at trial, Clark objected to Agent D'Errico's expert testimony and written report, arguing that it violated his right to effective assistance of counsel, due process, and confrontation. Clark proffered that the previous night he received an email from the Commonwealth disclosing Agent D'Errico's expert report and opinion "for the first time." Additionally, Clark proffered that he would have to cross-examine at least four other expert witnesses that day without the assistance of counter-experts. He concluded that he could not "effectively cross-examine" Agent D'Errico "at this last minute when [he had to] juggl[e] four other expert witnesses." Accordingly, Clark moved the trial court either to exclude Agent D'Errico's report and opinion or declare a mistrial. Alternatively, Clark argued that the Commonwealth could use the evidence in rebuttal because he had not timely provided his alibi notice.[4]

The Commonwealth countered that Agent D'Errico's expert report and opinion were admissible because the Commonwealth had previously provided defense counsel the cell phone records upon which Agent D'Errico based his opinion and the report was merely "demonstrative." Alternatively, the Commonwealth argued that only the report should be excluded.

---

[4] During argument, Clark's counsel proffered that he found the alibi witness the previous week but could not speak to her until two days before trial. The Commonwealth did not contest that proffer or object to Clark's alibi defense.

Additionally, the Commonwealth proffered that it had not withheld Agent D'Errico's report and did not seek to introduce it "solely [in] response to the alibi." Rather, the Commonwealth previously had consulted Agent D'Errico and "debated" whether to use "any cell phone data," but it was not until the previous night that the Commonwealth told Agent D'Errico "what [it] was looking for and generated some of those reports [sic]."[5] Accordingly, the Commonwealth asserted that its use of Agent D'Errico's report and opinion should not be limited to rebuttal. The Commonwealth also offered to agree to a recess so defense counsel could speak to Agent D'Errico before cross-examining him.[6] Clark did not request a continuance or a recess. The trial court "agree[d] with [the Commonwealth's] view of the situation" and denied the motion.

The Commonwealth then introduced Agent D'Errico's report and expert testimony. During cross-examination, Agent D'Errico acknowledged that he could not determine whether S.F.'s cell phone was sending or receiving messages on May 9, 2019. Nor did he know whether someone else was using Clark's cell phone near S.F.'s residence on May 9, 2019.

### 2. Amendments to the Indictments and the Defense Evidence

After the Commonwealth concluded its case-in-chief but before Clark called his first witness, the Commonwealth moved to amend the indictments to reflect that the offenses occurred "between May 8, 2019 and May 9, 2019" rather than "on or about" May 9, 2019. Clark objected, arguing that the "eleventh hour" amendment was "unfair" because he had "prepared an alibi defense that cover[ed]" May 9, 2019, but "not the new added date" of May 8, 2019.

---

[5] Agent D'Errico testified that he did not "finalize" his report until the night before the second day of trial.

[6] Later during argument on the Commonwealth's mid-trial motion to amend the indictments, the parties proffered that they had agreed to "operat[e] under the old [version of] Rule 3A:11," which did not explicitly require disclosing expert witnesses and their opinions.

The Commonwealth responded that Code § 19.2-231 permitted the amendments because they clarified that "on or about" May 9, 2019, included May 8, 2019. Additionally, the Commonwealth proffered that it had informed Clark's counsel before trial that the medical examiner would opine that S.F. had died within a 48-hour "window." Thus, the Commonwealth argued that Clark could not claim surprise. Despite maintaining that the amendments were a surprise, Clark did not request a continuance.

The trial court found that "on or about" May 9, 2019, included May 8, 2019, and that the amendments were not a "surprise," which it held "cancel[ed]" Clark's right to a continuance under Code § 19.2-231. Accordingly, the court allowed the amendments.

Clark then called his friend, Tamesha Kelly, as an alibi witness. Kelly testified that Clark picked her up from her apartment near his house around 11:30 a.m. on May 9, 2019, and drove her to work. Around 4:30 p.m. that afternoon, Clark drove her back home and then to school. Clark picked her up from school around 8:15 p.m. and drove her home. The Commonwealth did not present rebuttal evidence.

### 3. Closing Arguments and Conviction

The Commonwealth argued to the jury that Clark abducted, raped, and murdered S.F. around 6:51 p.m. on May 8, 2019, after giving his cell phone to Noller and then attempted to remove his semen from S.F.'s body by submerging it in the bathtub. Clark reminded the jury that the forensic evidence did not establish when S.F.'s rape and murder occurred, but that Kelly's testimony established that he could not have committed the offenses on May 9, 2019. Clark argued that the Commonwealth's theory that he gave his cell phone to Noller before murdering S.F. on May 8, 2019, and then returned to her residence the next day carrying the phone was illogical. In rebuttal, the Commonwealth argued that although Agent D'Errico opined that Clark's cell phone was near S.F.'s residence on May 9, 2019, it did not "matter why" Clark

returned to her residence that day "or even whether he did" because Clark had already "violently raped, abducted, and killed" S.F. at her home the previous evening. The jury returned unanimous verdicts convicting Clark as charged.

## C. First Motion for New Trial

Clark subsequently moved for a new trial asserting that allowing Agent D'Errico's report and testimony and amendments to the indictments violated his rights to a fair trial, due process, and confrontation under the federal and Virginia constitutions. Clark argued that he could not effectively cross-examine Agent D'Errico because he did not receive timely "notice" of his expert report and opinion and, therefore, could not retain a counter-expert to "provide a potentially different opinion" regarding "the veracity and meaning of the historical cell phone tower location evidence." Additionally, Clark asserted that amending the indictments during trial prevented him from presenting "additional alibi evidence." The trial court denied the motion.

## D. Show Cause Hearing

After trial but before sentencing, the trial court discovered that Juror 23, who had served on Clark's jury, was not a resident of the City of Richmond. The trial court notified the parties and issued a summons for the juror to appear at a show cause hearing. At the hearing, Juror 23 acknowledged that he previously had resided in the City of Richmond but had moved to Henrico County and was living there during Clark's trial. In September 2021, the juror learned that a jury summons and questionnaire had arrived for him at his old Richmond address. When he completed the jury questionnaire, he answered "Yes" to the question, "Have you been living in

- 9 -

the City of Richmond for the last six months," and specified that he lived at 107 Danray Drive, Richmond, Virginia 23227. That address is in Henrico County.[7]

During voir dire, Juror 23 was not part of the first panel of prospective jurors but was present when that panel was sworn and the trial court asked whether "anyone that ha[d] been sworn today" was "not a resident of the City of Richmond." Juror 23 and another prospective juror later joined the panel, were sworn, and acknowledged that they had "been listening" to the questions up to that point. When the trial court asked whether they had "anything [they] needed to tell" the court, they replied, "No, sir." They also shook their heads in response to defense counsel's question whether "there [was] anything [they] need[ed] to bring to the court's attention." At the show cause hearing, Juror 23 maintained that he had previously notified a sheriff's deputy that he was not a Richmond resident. The trial court nevertheless found that he had failed to provide "truthful answers" about his residency during voir dire. Accordingly, the trial court held Juror 23 in contempt and sentenced him to ten days in jail, all suspended, and a fine of $250.[8]

### E. Second Motion for New Trial

Clark subsequently moved for a mistrial on grounds that seating Juror 23 violated his right to an impartial jury under the federal and Virginia constitutions and required setting aside the verdicts and granting a new trial under Code § 8.01-352. At the hearing on Clark's motion, he clarified that he was also denied his Sixth Amendment right to be tried by a jury "of the State and the District in which the crime was committed" because Juror 23 was not a resident of the

---

[7] During the show cause hearing, the trial court stated, "I put the address into Google Earth and it's . . . well into Henrico." The record does not disclose the distance from Juror 23's Henrico County address to the Richmond city limits or when he moved. Additionally, the jury list is not a part of the record on appeal, although the parties received a copy of it before trial.

[8] Although the prosecutor and Clark's counsel were present at the show cause hearing, neither requested an opportunity to question Juror 23.

City of Richmond.[9]  Clark asserted that he was "entitled to an impartial jury of 12 citizens who follow the law and are residents of the City of Richmond" and that Juror 23's dishonesty during voir dire suggested that he may have failed to follow the trial court's instructions concerning the burden of proof and presumption of innocence during deliberations.  Finally, Clark argued that Code § 8.01-352 required ordering a new trial because Juror 23's non-residency was a legal "disability" and his "misrepresentation" of that fact was an "irregularity" that was both "intentional" and "probably cause[d] injustice."

Addressing Clark's Sixth Amendment vicinage clause claim, the Commonwealth asserted that violations of that right are governed by Code § 8.01-352.  The Commonwealth argued that Juror 23's non-resident status was a "disability" rather than an "irregularity" and Clark failed to demonstrate that it probably caused injustice as Code § 8.01-352 requires.

Regarding Clark's right to an impartial jury, the Commonwealth asserted that *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984), required Clark to demonstrate that (1) the juror failed to answer honestly a material question on voir dire and (2) that a correct response would have provided a valid basis for a challenge for cause.  The Commonwealth argued that the record did not establish that Juror 23 had lied about his residency during voir dire and, even if he did, the falsehood was not "material" because it was not probative of the juror's "bias" or "prejudice."[10]

---

[9] Clark did not assert his right under the vicinage clause in Article 1, section 8 of the Virginia Constitution, although he cited that provision in his written motion.

[10] The Commonwealth also argued that Clark waived any objection under Code § 8.01-352 because he received a copy of the jury list before trial and could have discovered Juror 23's non-residency.  But the trial court found that jury lists in that jurisdiction typically contained so many names that it would have been "impossible" for Clark "to [have] explore[d] that" issue.

- 11 -

The trial court found that Juror 23 "knowingly and intentionally" provided an "inaccurate response" about his residency during voir dire because he was unemployed and wanted to get paid for his jury service.[11]  Nevertheless, the court found that Clark failed to satisfy the *McDonough* test because (1) the juror's false answer was not material because it was not probative of his bias or prejudice, (2) the court would have "excused" the juror if he had provided the "correct response" but not "because of bias," and (3) it was speculative whether the juror had failed to follow jury instructions or had an actual bias against Clark.  The trial court otherwise adopted the Commonwealth's arguments and denied the motion.  The trial court sentenced Clark to life imprisonment for each charge.  Clark appeals.

ANALYSIS

I.  The evidence supported the jury's verdicts.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted

---

[11] During the hearing, the trial court indicated that it based this finding on hearsay statements it attributed to Juror 23: "It came from a sheriff's deputy who heard it from a juror who heard it from [Juror 23], but I think it has a ring of truth to it."  The court also found that Juror 23's desire to be paid, although "dishonest," suggested that he might have been "highly motivated to be a good juror."

- 12 -

to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Clark argues that the evidence was insufficient to sustain his convictions because it failed to exclude his reasonable hypothesis of innocence that someone else abducted and murdered S.F. after Clark had "consensual" intercourse with her at her home. Emphasizing his denials of any "sexual relationship" with S.F. despite the presence of his semen inside S.F.'s body and the presence of his DNA on the knife at the murder scene, Clark contends that those circumstances "failed to prove that the semen arrived there against the victim's will." Clark notes that there were "no injuries in the victim's vaginal area" and it was possible that his DNA was on the knife due to "cross-contamination" with the bandana, which he may have accidentally left in S.F.'s residence after working on her deck. Clark further asserts that because expert testimony established that "sperm can remain viable for up to five days," it is possible that "the murder and the sex" did not "occur[] in close temporal proximity." He concludes that "the evidence was no more than a collection of circumstantial facts which raised a possibility of [his] guilt."

On appeal, "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

- 13 -

In evaluating Clark's argument, we begin with the observation that "[t]he hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of" the defense. *Cook v. Commonwealth*, 226 Va. 427, 433 (1983). "[W]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (second alteration in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)). "As long as 'a rational factfinder could reasonably reject [the appellant's] theories in his defense and find that the totality of the suspicious circumstances proved [his guilt] beyond a reasonable doubt,' the appellate court must affirm the conviction." *Park v. Commonwealth*, 74 Va. App. 635, 654 (2022) (alterations in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 466 (2017)). "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (second and third alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

A rational fact finder could reject Clark's hypothesis of innocence based on the overwhelming evidence establishing the timing of the offenses, Clark's opportunity to commit the crimes, the DNA and other physical evidence at the crime scene, and his statements and conduct demonstrating his consciousness of guilt. To begin, Clark's own statements to the police contradicted his proffered hypothesis of innocence. It is well-established that "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). In assessing witness credibility, the jury was entitled to weigh Clark's conflicting positions and

reject Clark's theory that he had "consensual" intercourse with S.F. *Id.* The forensic evidence established that Clark's semen was inside S.F.'s vagina and the stains on her underpants. Clark's DNA also was present on the bloodstains on the glove, the bandana, and the handle of the knife found inside S.F.'s bathroom. Considering that evidence, the jury reasonably could conclude that Clark's sexual contact with S.F. was not consensual and his contrary claims were "little more than l[ies] to 'conceal his guilt,'" which the jury "could treat . . . as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins*, 44 Va. App. at 10; and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

In addition, data from S.F.'s cell phone, the expert testimony describing her injuries, and the physical evidence collected from the crime scene permitted the jury to infer that Clark abducted, raped, and murdered S.F. on May 8, 2019. A medical examiner determined that S.F. died from asphyxia by strangulation between 2:30 a.m. on May 8, 2019, and 6:30 p.m. on May 9, 2019. Data from S.F.'s cell phone established that she stopped responding to phone calls and text messages after 6:51 p.m. on May 8, 2019. Blood vessels in S.F.'s body eyes and face were ruptured and she had severe neck and spinal injuries, which an expert opined were consistent with strangulation. There were "ligature marks" around both her wrists from where her attacker bound her hands with iPhone cords, and she had abrasions on her neck. In addition, S.F.'s blood was on the blade of the knife found in her bathroom, the doorway to her bedroom, and the pillow and comforter of her bed. Moreover, forensic testing established that Clark's DNA was on the handle of the knife and on the sperm fractions found inside S.F.'s vagina, and an expert opined that there was "no indication of an additional contributor" to the DNA profile developed from the sperm fraction found inside S.F.'s vagina. From that evidence, the jury could conclude that Clark abducted, raped, and murdered S.F. some time after 6:51 p.m. on May 8, 2019.

The Commonwealth also introduced evidence of planning, a circumstance from which the jury could infer that S.F.'s abduction, rape, and murder were not crimes of opportunity. Under settled principles, a fact finder may infer a criminal defendant's "'consciousness of guilt' from his efforts to avoid detection." *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022). Clark told police that he typically carried his cell phone unless he allowed Noller to use it, and he challenged them to "check [his cell] phone" to prove his innocence. Data from Clark's phone established that around 6:20 p.m. and 6:24 p.m. on May 8, 2019, his email account was used to search for pornographic websites on his phone. Then, from 6:24 p.m. until 7:52 p.m., Noller's email account was used to search the internet on Clark's phone, after which Clark's cell phone called his employer.

From those circumstances, along with the other circumstantial evidence, the jury could infer that Clark sought sexual gratification. Clark then gave his cell phone to Noller to avoid detection by police while he went to S.F.'s residence around 6:51 p.m. on May 8, 2019. There, the forensic evidence permitted the inference that Clark attacked S.F. with a knife, bound her wrists behind her back with one piece of iPhone cord, raped her on the bed, and strangled her to death with the other iPhone cord. After killing S.F., Clark submerged her in the bathtub in an ineffectual attempt to destroy his semen that was inside her body. The next day, police found S.F.'s body submerged in water in her bedroom bathtub. Later while incarcerated pending trial, Clark told his ex-wife that police could not have discovered his DNA at the crime scene because S.F. had been "soaked in hot water." Detective Baynes testified that he did not disclose the water's temperature to Clark when he interviewed him after the murder.

Simply put, there was not an iota of evidence that S.F had engaged in consensual intercourse with Clark. Furthermore, the argument that someone else had murdered her afterwards is one cut from whole cloth. Instead, the record fully supports the jury's finding that

Clark abducted, raped, and murdered S.F. The jury considered the totality of the evidence and properly rejected Clark's theory of innocence. Accordingly, we find no basis to disturb the trial court's judgment.

## II. Any error in admitting Agent D'Errico's report and testimony was harmless.

Clark contends that Agent D'Errico's report and testimony were inadmissible because the Commonwealth failed to timely disclose that evidence. Clark asserts that the Commonwealth violated the trial court's discovery order requiring it to disclose any "scientific reports" in its possession under Rule 3A:11. Additionally, Clark argues that the late disclosure prevented him from seeking his own expert to help effectively cross-examine Agent D'Errico and potentially rebut his testimony. He contends that his inability to cross-examine Agent D'Errico violated his rights to effective assistance of counsel, compulsory process, and confrontation under the Sixth Amendment of the United States Constitution, due process under the federal and Virginia Constitutions, and his right to call evidence in his favor under Article 1, section 8 of the Virginia Constitution.[12] Accordingly, Clark contends that the trial court essentially prevented him from presenting a defense by admitting Agent D'Errico's expert report and testimony and refusing to declare a mistrial.

"On appeal, this Court reviews a claim that the trial court erred in the manner in which it oversaw the parties' discovery [under] the Rules of the Supreme Court of Virginia under an abuse of discretion standard." *Harvey v. Commonwealth*, 76 Va. App. 436, 472 (2023). "An abuse of discretion has occurred only when 'reasonable jurists could not differ' in their assessment that an erroneous result was reached." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). Similarly, whether to grant a mistrial rests within the trial court's sound

---

[12] We do not consider Clark's ineffective assistance of counsel claim because "[c]laims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal." *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001).

discretion.  *Nelson v. Commonwealth*, 41 Va. App. 716, 731-32 (2003), *aff'd*, 268 Va. 665 (2004).  This Court will not reverse "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial."  *Id.* at 732 (alterations is original) (quoting *Taylor v. Commonwealth*, 25 Va. App. 12, 17 (1997)).  We review the trial court's legal conclusions and questions of statutory and constitutional interpretation de novo.  *Walker v. Commonwealth*, 74 Va. App. 475, 506 (2022), *aff'd*, ___ Va. ___ (June 1, 2023).

"A criminal defendant does not have a [constitutional] right to discovery [under the due process clauses of the federal and Virginia constitutions], except as to exculpatory evidence,"[13] *Nelson*, 41 Va. App. at 727 n.7, and a "defendant's access to inculpatory evidence stems only from" Rule 3A:11, *Smoot v. Commonwealth*, 37 Va. App. 495, 502 n.1 (2002).  Nevertheless, "[w]hen a court orders discovery [under] Rule 3A:11, the Commonwealth has a duty to disclose the materials in sufficient time to afford an accused an opportunity to assess and develop the evidence for trial," consistent with his right to "call for evidence in his favor" under Virginia Constitution Article 1, section 8.  *Lomax v. Commonwealth*, 228 Va. 168, 173 (1984).  Thus, although "[t]he relief to be granted upon a violation of Rule 3A:11 is within the discretion of the trial court," the court must give "due regard to the right of the accused to call for evidence in his favor and to investigate and evaluate the evidence in preparation for trial."  *Frye v. Commonwealth*, 231 Va. 370, 383 (1986).

---

[13] The Supreme Court of Virginia has held that a defendant's "rights under the [Sixth Amendment's] confrontation clause . . . '[do] not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.'"  *Goins v. Commonwealth*, 251 Va. 442, 456 (1996) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality opinion)).  Rather, those rights are "designed to prevent the improper restriction of cross-examination" and are "satisfied if defense counsel receives wide latitude at trial to question witnesses."  *Id.*  Similarly, the Sixth Amendment's "compulsory process clause provides a defendant with government assistance in compelling the presence of favorable witnesses at trial" but "provides no greater protections" in obtaining pretrial discovery "than those afforded by due process."  *Id.*

We need not decide whether the trial court erroneously admitted Agent D'Errico's testimony and report because any such error was harmless. "Constitutional error, like other types of error, remains subject to analysis under the doctrine of harmless error."[14] *Commonwealth v. White*, 293 Va. 411, 420 (2017) (quoting *Foltz v. Commonwealth*, 284 Va. 467, 472 (2012)); *see also* Code § 8.01-678 (mandating harmless error review in all cases). "The proper inquiry for constitutional harmless error is 'whether the [jury] *would have* returned the same verdict absent the error.'" *White*, 293 Va. at 421-22 (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006)); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that constitutional error is harmless if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt").

"Harmless error analysis 'is available not only when the error consists of erroneously admitting evidence' for the Commonwealth 'but also when it consists of [erroneously] excluding defense evidence.'" *Harvey*, 76 Va. App. at 483 (alteration in original) (quoting *United States v.*

---

[14] Virginia "recognizes the distinction between 'trial error' and 'structural error.'" *Ray v. Commonwealth*, 55 Va. App. 647, 651 (2010). The former is subject to harmless error review but the latter is not. *Id.* "A 'structural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Prieto v. Warden of Sussex I State Prison*, 286 Va. 99, 103 (2013) (quoting *Morrisette v. Warden of the Sussex I State Prison*, 270 Va. 188, 192 (2005)). "Structural errors have been found in a very 'limited class of cases,' and include [inter alia] the denial of counsel, the denial of an impartial trial judge, and the systematic exclusion of members of the defendant's race from the grand jury." *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). We have recognized that the deprivation of an accused's right to call forth evidence in his favor may constitute structural error in some cases where "'an asymmetry' exists between allowing the prosecutor 'to put in more evidence of guilt than he should have' and the extreme case of preventing the defendant 'from putting on a[ny] defense [at all].'" *Harvey*, 76 Va. App. at 483 (alterations in original) (quoting *United States v. Cerro*, 775 F.2d 908, 916 (7th Cir. 1985)). Thus, "[i]f the defendant were utterly precluded from defending himself, it would be clear that his conviction had to be reversed even if the evidence of guilt was overwhelming and could not have been offset by the evidence that the defendant would have introduced if allowed to do so." *Cerro*, 775 F.2d at 916. But where "a defendant is only partially deprived of the 'right to call witnesses on his behalf,' the error is harmless if the record establishes 'that a rational jury would have found the defendant guilty absent the error.'" *Harvey*, 76 Va. App. at 483 (quoting *United States v. Rhynes*, 218 F.3d 310, 323 (4th Cir. 2000) (en banc)).

*Cerro*, 775 F.2d 908, 916 (7th Cir. 1985)).  In conducting its harmless error analysis, an appellate court must consider "the potential effect of the [erroneously admitted or] excluded evidence in light of all the evidence" before the jury.  *Haas v. Commonwealth*, 299 Va. 465, 467 (2021) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016)) (considering non-constitutional error); *see Maynard v. Commonwealth*, 11 Va. App. 437, 448 (1990) (en banc) (assuming that a constitutional error had the most damaging effect possible).  "[W]hether such an error is harmless in a particular case depends upon a host of factors," including the "importance of the [tainted evidence] in the prosecution's case, whether [that evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points . . . [and] the overall strength of the prosecution's case."  *Crawford v. Commonwealth*, 281 Va. 84, 101 (2011) (second, third, fourth, and fifth alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Erroneously admitted evidence favorable to the Commonwealth is harmless beyond a reasonable doubt where the "overall strength of the Commonwealth's case," independent of the challenged evidence, is "overwhelming" and the "tainted evidence" has limited "importance . . . in the prosecution's case."  *Crawford*, 281 Va. at 102.  Similarly, "constitutional error in excluding defense evidence is harmless if 'the evidence of guilt was overwhelming and the defendant was allowed to put on a defense, [even] if not quite so complete a defense as he might reasonably have desired.'"  *Harvey*, 76 Va. App. at 484 (alteration in original) (quoting *Cerro*, 775 F.2d at 916).

The record establishes Agent D'Errico's expert report and testimony were not the linchpin in the Commonwealth's case.  Indeed, during closing argument, the Commonwealth argued that it was irrelevant whether Clark returned to S.F.'s residence on May 9, 2019, as Agent D'Errico's testimony and report suggested, because the balance of the evidence established that

Clark had already abducted, raped, and murdered S.F. the previous evening.  Moreover, as discussed, the above unchallenged evidence overwhelmingly proved Clark's guilt.  Accordingly, any error in admitting Agent D'Errico's report and testimony was harmless beyond a reasonable doubt.

Moreover, assuming without deciding that the trial court prevented Clark from obtaining a counter-expert to rebut Agent D'Errico's testimony, any such error was harmless beyond a reasonable doubt.  Clark thoroughly cross-examined Agent D'Errico at trial, during which the agent acknowledged that he could not determine whether someone else was using his cell phone near S.F.'s residence on May 9, 2019.  In addition, Clark presented an alibi witness who testified that he drove her to various destinations around the times Agent D'Errico opined that Clark's cell phone was near S.F.'s residence on May 9, 2019.  Clark emphasized those points during his closing argument to the jury and urged the jury to reject as illogical the Commonwealth's theory that he deliberately gave his cell phone to Noller before committing the offenses at S.F.'s residence May 8, 2019, but then carried his phone to S.F.'s residence the next day.  Thus, Clark was "allowed to put on a defense," albeit "not quite so complete a defense as he might reasonably have desired.'"  *Id.* (quoting *Cerro*, 775 F.2d at 916).  In sum, any error in admitting Agent D'Errico's expert report and testimony and preventing Clark from presenting a counter-expert was harmless beyond a reasonable doubt.

III.  The trial court did not abuse its discretion in allowing the Commonwealth to amend the indictments.

Clark contends that the trial court erred when it permitted the Commonwealth to amend the indictments to reflect that the offenses occurred "between May 8, 2019, and May 9, 2019," rather than "on or about" May 9, 2019, because doing so violated his due process right to present an alibi defense.  Clark concedes that "Code § 19.2-220 permits indictments to state that a crime occurred 'on or about a certain date'" and that Code § 19.2-231 allows amending the date of

offense on an indictment provided "time is not of the essence of the offense." Notwithstanding that concession, he maintains that "due process must give greater protection to defendants [when] an affirmative defense of alibi is being asserted." Clark asks this Court to overturn, extend, modify, or reverse any existing precedent that conflicts with his arguments.

A trial court's authority to amend an indictment is governed by the due process clauses of the federal and Virginia constitutions and by statute. *Gomez v. Commonwealth*, 72 Va. App. 173, 176-77 (2020). In determining whether the trial court made an error of law, we review the trial court's statutory and constitutional interpretations de novo. *Walker*, 74 Va. App. at 506.

"The Due Process Clauses of the Constitution of the United States and the Constitution of Virginia mandate that an accused be given proper notification of the charges against him." *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000); U.S. Const. amend. XIV; Va. Const. art. 1, § 11. "The purpose of an indictment is to provide the accused with notice of the cause and nature of the accusations against him" so that he can prepare a defense. *Commonwealth v. Bass*, 292 Va. 19, 28 (2016). Code § 19.2-231, provides that a trial court may at any time "before the jury returns a verdict" permit the amendment of an indictment due to any "defect in form" or if there is a "variance between the allegations therein" and the evidence presented, "*provided the amendment does not change the nature or character of the offense charged.*" (Emphasis added). "[I]f . . . the trial . . . court finds that such amendment operates as a surprise to the accused, he shall be entitled, upon request, to a continuance of the case for a reasonable time."[15] *Id.*

Because due process requires an indictment to provide the accused notice of the charges against him, amendments under Code § 19.2-231 are permissible only if they do not alter "the

_____

[15] Additionally, an indictment shall not be "quashed or deemed invalid . . . [f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense." Code § 19.2-226(6); *see also* Code § 19.2-220 (allowing an indictment to recite "that the accused committed the offense on or about a certain date").

nature or character" of the accusations. *Rawls v. Commonwealth*, 272 Va. 334, 346 (2006). Nonetheless, "where the date of the offense *is 'not of the essence of the offense,' nor 'shown to be significant*,' the Commonwealth is not required to charge that it occurred on a specific date . . . [and] the Commonwealth may even prove that the offense occurred on a date other than that alleged in the charging instrument." *Raja v. Commonwealth*, 40 Va. App. 710, 721 (2003) (emphasis added) (some internal quotation marks and citations omitted).

In *Marlowe v. Commonwealth*, 2 Va. App. 619, 625 (1986), we held that there was no due process violation where a defendant was charged with sexually assaulting a child "on or about" February 17, 1984, and he presented an alibi defense for that specific date at trial, but the trial court instructed the jury that it was unnecessary to prove that the offense occurred exactly on that date. *Id.* at 621-22. There, the indictments did not fix the date of the alleged offense and the defendant did not move for a bill of particulars to clarify the offense date. *Id.* at 625-26. Similarly, in *Clinebell v. Commonwealth*, 3 Va. App. 362, 367 (1986), *aff'd in part, rev'd in part on other grounds*, 235 Va. 319 (1988), we held that an amendment changing the offense dates specified in an indictment for child sexual assault from "on or between June 1, 1984 and July 30, 1984" to "on or between June 1, 1983 and June 30, 1984" did not violate a defendant's right to present an alibi defense because time was not the essence of the charge. Conversely, a mid-trial amendment that changed the offense date in a child sexual assault indictment by an entire year can "operate[] as a surprise" to the defendant and entitle him to a continuance under Code § 19.2-231 to seek additional alibi witnesses. *Crawford v. Commonwealth*, 23 Va. App. 661, 665-66 (1996) (en banc).

The record here does not support Clark's claim that the amendments violated his due process right to present an alibi defense. Time is not an element for any of the charged offenses. *See* Code §§ 18.2-32, -48, -61; *see also Waitt v. Commonwealth*, 207 Va. 230, 235 (1966)

- 23 -

(holding time is not the essence of statutory rape charge); *Wood v. Commonwealth*, 140 Va. 491, 500 (1924) (holding time is not of the essence for murder charge). Moreover, the original language in the indictments charged that the offenses occurred "on or about" May 9, 2019, which encompassed May 8, 2019. *See* Code § 19.2-220 (providing that an indictment may charge "that the accused committed the offense on or about a certain date"). Further, the Commonwealth notified Clark before trial that the medical examiner determined that S.F. died within a 48-hour "window." Thus, Clark "had knowledge that the [Commonwealth] would attempt to prove" that the crimes may have occurred on May 8, 2019. *See State v. Pierce*, 207 S.E.2d 414, 416 (S.C. 1974) (holding that due process prohibits the Commonwealth from "prov[ing] a different date than that set forth in the indictment where [the] defendant relies upon the defense of alibi, *unless the defendant is held to have had knowledge* that the [Commonwealth] would attempt to prove a different date upon trial" (emphasis added)). In addition, the amendments occurred before Clark presented his alibi witness. *See State v. Vincent*, 241 S.E.2d 390, 392 (N.C. 1978) (holding that the court may not amend the offense date in an indictment "*after* the defendant has presented his alibi evidence and rested his case" (emphasis added)).[16] Finally, Clark's failure to move for a bill of particulars to clarify the offense date before trial or request a continuance after the amendment to seek additional alibi witnesses undercuts his claim that he did not have adequate

---

[16] Both *Pierce* and *Vincent* were cited with approval in *Marlowe*. However, both were distinguished because those indictments contained a date certain rather than reciting the "on or about" language contained in the *Marlowe* indictment.

notice to prepare an alibi defense.  *Marlowe*, 2 Va. App at 625-26.  Accordingly, there was no

due process violation.[17]

      IV.  The trial court did not err by refusing to set aside the jury's verdicts and order
           a new trial based on Juror 23's non-residency and misconduct.

Clark challenges the trial court's denial of his motion for a new trial based on Juror 23's

dishonesty regarding his non-residency on three separate grounds.  First, Clark asserts that

seating Juror 23 violated the "vicinage clauses" of the federal and Virginia constitutions.  Next,

Clark argues that seating Juror 23 violated Clark's right to an impartial jury.  Finally, Clark

contends that Code § 8.01-352, which governs objections to irregularities in impaneling a jury or

to seating jurors due to legal disability, required setting aside the jury's verdicts and ordering a

new trial.  We address each in turn.

      A.  We do not consider Clark's vicinage clause arguments because they are
          procedurally defaulted.

        1.  Clark's Sixth Amendment vicinage clause claim is procedurally
           defaulted under Rule 5A:20(e).

Clark argues that seating Juror 23 violated the Sixth Amendment's "vicinage clause,"

which provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and

public trial, by an impartial jury *of the State and district wherein the crime shall have been*

*committed, which district shall have been previously ascertained by law*."  U.S. Const. amend.

VI (emphasis added).  Clark acknowledges that whether that provision applies to the States is an

open question.  Yet, Clark does not present any argument that the provision applies to the States

---

[17] To the extent that Clark argues for reversing, extending, modifying, or overruling precedents that conflict with his arguments, this Court is "'bound by decisions of the Supreme Court of Virginia and [is] without authority to overrule' them."  *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991)).  Further, the interpanel-accord doctrine provides that a decision of a prior panel of this Court "'becomes a predicate for application of the doctrine of stare decisis' and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court."  *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003)).

but merely assumes that it does for purposes of his argument. Clark argues that Juror 23 was not from the "vicinage" because he did not reside in the City of Richmond when he was summoned for jury duty. He argues, therefore, that the juror's vote was invalid and defeated the unanimity of the jury's verdicts. Additionally, Clark asserts that Juror 23 was incapable of performing the essential functions of a juror because he lacked certain qualifications unique to jurors of the vicinage.

We do not address Clark's argument because his brief fails to comply with Rule 5A:20(e). An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Id.* at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'" *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012) (alterations in original) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (en banc)). On the contrary, Rule 5A:20(e) requires an appellant "to present [this Court] with legal authority to support [his] contention" that the trial court erred. *Bartley*, 67 Va. App. at 746 (second alteration in original) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)). Thus, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* (quoting *Sneed*, 301 S.W.3d at 615).

Clark correctly concedes on brief that neither the Supreme Court of the United States nor this Court has addressed whether the Sixth Amendment's vicinage clause applies to the States

via the Fourteenth Amendment's due process clause.[18]  But Clark did not provide any persuasive

authority in his brief to demonstrate that the federal vicinage clause applies to the States.[19]

Rather than meeting his obligation under Rule 5A:20(e), Clark merely assumes that the Sixth

Amendment's vicinage clause applies "[g]iven that there appears to be no binding precedent

holding that [it] does not apply to the [S]tates."  By neglecting to provide any authority to

support his incorporation claim, Clark fails to address a threshold question necessary to resolve

his argument on appeal and instead invites this Court to assume the role of advocate by crafting

the position for him.  *Bartley*, 67 Va. App. at 745.  Accordingly, Clark's failure to comply with

Rule 5A:20(e) is "significant," and we decline to consider his federal vicinage clause claim

altogether.  *Id.*

### 2. Clark's Virginia vicinage clause claim is procedurally defaulted under Rule 5A:18.

Clark also contends that seating Juror 23 violated the vicinage clause in Article 1,

section 8 of the Virginia Constitution, which states that "in criminal prosecutions a man . . . shall

enjoy the right to a speedy and public trial, by an impartial jury of his vicinage, without whose

unanimous consent he cannot be found guilty."  Clark asserts that Virginia's vicinage clause

required drawing jurors from the City of Richmond because that is where the crime occurred,

---

[18] The Supreme Court of the United States recently held that "[t]he reversal of a conviction [in federal court] based on a violation" of the Sixth Amendment's vicinage clause does not trigger double jeopardy, but the Court did not address whether the federal vicinage clause applies to the States.  *Smith v. United States*, 599 U.S. 236, 253 (2023).

[19] In a footnote, Clark notes that in *Fields v. Commonwealth*, 73 Va. App. 652, 666 (2021), this Court "quoted the vicinage clause of the Sixth Amendment" but "did not explicitly address incorporation."  *Fields* is inapposite because it did not address whether the federal vicinage clause is incorporated against the States, and this Court cited that provision only to say that the "Sixth Amendment of the United States Constitution grants criminal defendants the right to trial by an *impartial* jury in both federal and state courts."  73 Va. App. at 666 (emphasis added).  Moreover, the citation to a single case, without more, is insufficient to satisfy Rule 5A:20(e)'s briefing requirements.  *Bartley*, 67 Va. App. at 745.

and Juror 23 was not from "his vicinage." Clark further contends that the error was prejudicial for the same reasons cited with respect to the federal vicinage clause claim.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)), *aff'd*, 270 Va. 1 (2005). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Thus, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). Moreover, "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue." *Id.* at 760 (quoting *Buck v. Commonwealth*, 247 Va. 449, 452-53 (1994)).

"Rule 5A:18 applies to bar even constitutional claims." *Farnsworth*, 43 Va. App. at 500 (quoting *Ohree*, 26 Va. App. at 308). Thus, we have held that an appellant's "brief reference to [a] constitutional issue in his written motion," without more, is insufficient to preserve a

constitutional claim for appeal. *Howard v. Commonwealth*, 55 Va. App. 417, 425 (2009), *aff'd*, 281 Va. 455 (2011).

The record establishes that Clark cited Article 1, section 8 of the Virginia Constitution in his written motion for a new trial but did not argue any independent grounds based on it. Accordingly, Clark did not preserve that issue for appeal. *See Commonwealth v. Hilliard*, 270 Va. 42, 53 (2005) (holding party failed to preserve Sixth Amendment right-to-counsel claim for appeal where he invoked that right in his written motion to suppress but did not assert it during argument on the motion). Nevertheless, he asks this Court to address his argument under the ends of justice exception.

The ends of justice exception to Rule 5A:18 does not apply. Application of the ends of justice exception requires proof of an error that was "clear, substantial and material." *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989). The record "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997); *Brown*, 8 Va. App. at 131 ("The error must involve substantial rights."). A "violation of constitutional principles," of itself, is insufficient to justify applying the ends of justice exception. *West v. Commonwealth*, 43 Va. App. 327, 339 (2004) (citing *Ashby v. Commonwealth*, 33 Va. App. 540, 544-45 (2000)). But "some procedures are so crucial that a court's failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the *result*." *Id.* at 338. *See, e.g.*, *Johnson v. Commonwealth*, 20 Va. App. 547, 553-54 (1995) (en banc) (applying ends of justice to consider trial court's failure to properly instruct jury on the elements of charged offense); *Webb v. Commonwealth*, 64 Va. App. 371, 378-79 (2015) (applying ends of justice exception to consider trial court's erroneous acceptance of nonunanimous sentencing verdict).

The Supreme Court of Virginia has held that "if a party fails to timely bring a challenge based on a claim that a juror is incompetent to serve for reasons such as alienage, infancy, *or nonresidency*, whether 'voluntarily, or through negligence, or want of knowledge' such claim is waived." *Prieto v. Warden of Sussex I State Prison*, 286 Va. 99, 104 (2013) (emphasis added) (quoting *Kohl v. Lehlback*, 160 U.S. 293, 302 (1895)). The Court emphasized that "such 'defect *is not fundamental as affecting the substantial rights of the accused*[,] and the verdict is not void for want of power to render it.'" *Id.* (alteration in original) (emphasis added). Here, Clark failed to raise a timely challenge to seating Juror 23 based on Virginia's vicinage clause. Under *Prieto*, we are bound to conclude that seating Juror 23 did not affect Clark's "substantial rights." *Id.* Accordingly, the ends of justice exception does not apply. *See Brown*, 8 Va. App. at 131.

### B. Clark failed to establish that seating Juror 23 violated his right to an impartial jury.

Clark also contends that seating Juror 23 violated his right to an impartial jury under the federal and Virginia constitutions. He argues that the trial court erred in applying the two-part test under *McDonough Power Equipment, Inc.*, 464 U.S. 548, for determining whether to grant a new trial based on juror dishonesty during voir dire. Clark argues that Juror 23's deliberately false response during voir dire regarding his non-residency was "material" because it implicated Clark's constitutional right to "an impartial jury of his vicinage," and the correct answer would have provided a valid basis for a challenge for cause because seating a non-resident juror violates the vicinage clauses. Clark maintains that "[w]hether [the juror] [was] struck for bias or for constitutional ineligibility is not important." In addition, Clark argues that Juror 23's dishonesty during voir dire suggests that he may also have disregarded the trial court's instructions concerning the presumption of innocence and burden of proof. He claims that such a possibility demonstrated Juror 23's actual bias against Clark.

- 30 -

"Under the Federal and State Constitutions, U.S. Const. amends. VI and XIV; Va. Const. art. 1, § 8, an accused has a right to trial by an 'impartial jury.'" *Wm. Patterson v. Commonwealth*, 222 Va. 653, 658 (1981). That said, "juror impartiality is a factual determination, disturbed on appeal only for 'manifest error.'" *Brooks v. Commonwealth*, 41 Va. App. 454, 460 (2003) (quoting *David v. Commonwealth*, 26 Va. App. 77, 80 (1997)). Accordingly, this Court will not reverse the denial of a motion for mistrial "unless there exists a manifest probability that [the ruling] was prejudicial." *Nelson*, 41 Va. App. at 732 (alteration in original) (quoting *Taylor*, 25 Va. App. at 17). We review the trial court's legal conclusions and questions of constitutional interpretation de novo. *Walker*, 74 Va. App. at 506.

Virginia recognizes implied bias claims based on juror dishonesty during voir dire and actual bias claims based on "additional circumstances occurring outside the voir dire." *Blevins v. Commonwealth*, 267 Va. 291, 298 (2004). To succeed on an implied bias claim, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Porter v. Warden of Sussex I State Prison*, 283 Va. 326, 327 (2012) (quoting *McDonough Power Equip.*, 464 U.S. at 556). "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.*

We do not consider Clark's implied bias claim under *McDonough* because it is based entirely on his vicinage clause arguments, which are procedurally defaulted. Accordingly, Clark's implied bias claim is waived.

Clark also raises an actual bias claim based on Juror 23's potential disregard of the trial court's instructions during jury deliberations. To succeed on such a claim, a party must demonstrate at a hearing that the juror had "actual bias" against him. *Blevins*, 267 Va. at 298 (citing *Fitzgerald v. Greene*, 150 F.3d 357, 363 (1998)). If the defendant fails at a hearing to

demonstrate that a juror had actual bias, then the trial court is not required to order a new trial. *Id.* Moreover, the trial court need grant such a hearing upon request only if, considering "the totality of the circumstances," the "party presented credible allegations of bias that undermine the prior determination of impartiality reached by the court at the conclusion of the *voir dire* process." *Nelson*, 41 Va. App. at 733.

Clark failed to establish that Juror 23 harbored an actual bias against him. Although the trial court found that Juror 23 deliberately lied about his residency during voir dire, the trial court further found that the motivation for the dishonesty was not a bias against Clark but a desire to "get paid" for serving. Clark identifies nothing in the record establishing that Juror 23 also disregarded the trial court's instructions governing the burden of proof and presumption of innocence during jury deliberations. Instead, he merely speculates that such an outcome was possible. But more is required of Clark than speculation. Under *Blevins*, Clark had the burden to demonstrate that Juror 23 harbored an actual bias against him. *Blevins*, 267 Va. at 298. The record establishes that Clark's counsel was present at the show cause hearing in which the trial court held Juror 23 in contempt but did not request an opportunity to question Juror 23 to demonstrate whether he had, in fact, ignored the trial court's instructions. Accordingly, Clark's assertion that Juror 23 may have disobeyed the trial court's instructions and had actual bias against him is speculative.

In sum, we do not consider Clark's implied bias claim because it is premised on his defaulted vicinage clause arguments. In addition, Clark did not establish that Juror 23 had actual bias against him. Accordingly, the trial court did not err by refusing to order a new trial.

        C. The trial court did not abuse its discretion in refusing to order a new trial under Code § 8.01-352.

Clark argues that the trial court erred by denying his motion for a new trial under Code § 8.01-352 because Juror 23 did not satisfy the statutory residency requirements to serve on

- 32 -

Clark's jury. Clark characterizes Juror 23's non-residency as a legal "disability" and claims Juror 23's intentional misrepresentation of that fact during voir dire caused an "irregularity" in impaneling the jury. Clark asserts Code § 8.01-352 required setting aside the jury's verdicts and ordering a new trial because (1) the irregularity was "intentional" and (2) both the irregularity and disability "probably cause[d] injustice" because Juror 23's seating violated the vicinage clauses of the federal and Virginia constitutions and the juror's dishonesty on voir dire suggests that he may have disregarded the jury instructions and was not impartial.

The decision to grant a mistrial rests within the sound discretion of the trial court. *Nelson*, 41 Va. App. at 730-31. "Whether an irregularity [or disability] has prejudiced a party and whether a juror remains fair and impartial are questions of fact to be resolved by the trial court and are entitled to deference on appeal." *Reiner v. Commonwealth*, 40 Va. App. 440, 465 (2003), *aff'd*, 268 Va. 296 (2004). This Court will not reverse "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial." *Nelson*, 41 Va. App. at 732 (alterations in original) (quoting *Taylor*, 25 Va. App. at 17). We review the trial court's legal conclusions and questions of statutory and constitutional interpretation de novo. *Walker*, 74 Va. App. at 506.

Code § 8.01-352 provides as follows:

> A. Prior to the jury being sworn, the following objections may be made without leave of court: (i) an objection specifically pointing out the irregularity in any list or lists of jurors made by the clerk from names drawn from the jury box, or in the drawing, summoning, returning or impaneling of jurors or in copying or signing or failing to sign the list, and (ii) an objection to any juror on account of any legal disability; after the jury is sworn such objection shall be made only with leave of court.

> B. Unless objection to such irregularity or disability is made pursuant to subsection A herein and *unless it appears that the irregularity was intentional or that the irregularity or disability be such as to probably cause injustice* in a criminal case to the Commonwealth or to the accused and in a civil case to the party

- 33 -

making the objection, then such irregularity or disability shall not be cause for summoning a new panel or juror or for setting aside a verdict or granting a new trial.

(Emphasis added).

Relevant here, to demonstrate "cause" for setting aside the jury's verdicts and granting a new trial under Code § 8.01-352, Clark had the burden of establishing either that (1) Juror 23 had a legal "disability" that "probably cause[d] injustice" to him or (2) Juror 23's misconduct during jury selection caused an "irregularity" in impaneling the jury that was either "intentional" or "probably cause[d] injustice" to him. *Id.*

The Supreme Court of Virginia has held that a juror's failure to meet the statutory criteria for jury service[20] is a "disability" under Code § 8.01-352 and a defendant must establish that such defect probably caused injustice to him to warrant a new trial. *See Prieto*, 286 Va. at 102-03 (holding that a juror's non-residency was a "disability"); *see also Mighty v. Commonwealth*, 17 Va. App. 495, 498 (1993) (holding juror's felon status was a "disability").

An "irregularity" has been defined as "an act or practice that varies from the normal conduct of an action." *Irregularity*, *Black's Law Dictionary* (11th ed. 2019). A plain reading of the text of Code § 8.01-325 demonstrates that the term "irregularity" applies only to actions by the trial court clerk or trial judge. *See* Code § 8.01-325(A) (requiring a criminal defendant to "point[] out the irregularity in any list or lists of jurors *made by the clerk* from names drawn from

---

[20] Code §§ 8.01-337 and -338 expressly define the statutory criteria for jury service. The former provides in part that

> [a]ll citizens over 18 years of age who have been residents of the Commonwealth one year, and of the county, city, or town in which they reside six months next preceding their being summoned to serve as such, and competent in other respects, except as hereinafter provided, shall be liable to serve as jurors.

Code § 8.01-337. The latter disqualifies certain persons from serving as jurors, including those "adjudicated incapacitated" or "convicted of treason or a felony." Code § 8.01-338.

the jury box, *or* in the drawing, summoning, returning or impaneling of jurors or in copying or signing or failing to sign the list" (emphasis added)). Indeed, the tasks of making, copying, or signing the "list or lists of jurors" and "drawing, summoning, returning or impaneling" jurors are reserved by statute to the trial court clerk and trial judge.[21] Thus, an "irregularity" is "intentional" under Code § 8.01-352 only *if the trial court clerk or trial judge* intentionally committed an act or adopted a practice that varies from the normal conduct of an action in making the "list or lists of jurors" or in "drawing, summoning, returning or impaneling" jurors or "in copying or signing or failing to sign the list." Code § 8.01-352(A).

Consistent with those principles, the Supreme Court has held that a trial court clerk's intentional violation of the statutory requirements for issuing a writ of venire facias was an intentional irregularity in summoning jurors under Code § 8.01-352's predecessor, Code § 19.1-201. *Harmon v. Commonwealth*, 212 Va. 442, 444 (1971) (citing *Patrick v. Commonwealth*, 115 Va. 933, 938 (1913)). By contrast, the Court found that a trial court clerk's inadvertent exclusion of all jurors who had previously served on a felony panel from the venire for a criminal defendant's jury trial was an unintentional irregularity in summoning the jurors under Code § 8.01-352. *O'Dell v. Commonwealth*, 234 Va. 672, 690 (1988).

---

[21] *See* Code § 8.01-351 (providing that "[t]he clerk shall make and sign" the "list" of jurors for each term, which "shall be signed also by the judge"); Code § 8.01-354 (defining the term "writ of venire facias" as the "list or lists of jurors made by the clerk from names drawn from the jury box" and providing that the "notice to appear in court served or mailed as provided herein shall be equivalent to summoning such juror in execution of a writ of venire facias"); Code § 8.01-348 (specifying that the "clerk or deputy clerk, in the presence of the judge," shall draw the names of jurors from the jury box during jury selection); Code § 8.01-349 (requiring "the clerk" to separate the names of jurors drawn from the jury box "known by the clerk or other person attending the drawing to be deceased, exempt or disqualified by law, not a resident of the county or city, or physically or mentally incapacitated for jury service"); Code § 8.01-355 (providing that the trial "judge shall direct the selection of as many jurors [from the jury list] as may be necessary to appear for the trial of any case"); Code § 8.01-357 (providing that the trial judge shall direct selection of the jury panel).

In addition, we have recognized that juror misconduct during jury selection may cause an *unintentional* irregularity in summoning or impaneling a jury under Code § 8.01-352. In *Mighty*, we held that seating two convicted felons as jurors did not require a new trial under Code § 8.01-352 even though they falsely answered that they were not convicted felons on a jury questionnaire during jury selection. *Mighty*, 17 Va. App. at 498. We held that the jurors' status as convicted felons was a legal disability under Code § 8.01-352 and their failure to disclose that information during jury selection caused an "irregularity" in impaneling the jury. *Id.* Nonetheless, because there was no evidence that the trial court knew of the jurors' status as convicted felons when it summoned or impaneled the jury, the irregularity was unintentional and the defendant was required to demonstrate that seating the two jurors "probably cause[d] injustice." *Id.* The defendant failed to present any evidence to "demonstrate the required prejudice," so we affirmed. *Id.*

Similarly, in *Thurman v. Commonwealth*, 107 Va. 912, 915 (1908), the Supreme Court of Virginia held that seating a Portsmouth, Virginia resident on the jury for a criminal defendant's trial in Norfolk, Virginia caused an unintentional irregularity in impaneling the jury and the defendant failed to demonstrate that it probably caused injustice. The Court emphasized that there was "no suggestion in the record that the summoning of the juror in question was with the knowledge that he was a citizen of Portsmouth, or that his being placed upon the jury by possibility caused injustice to the accused." *Id.*

Here, assuming without deciding that Juror 23 did not meet the statutory residency requirements for serving on Clark's jury, that circumstance was a legal "disability" under Code § 8.01-352. *Prieto*, 286 Va. at 102-03. In addition, although the trial court found that Juror 23 deliberately lied about his residency during jury selection, nothing in the record suggests that either the trial court clerk or trial judge knew of that circumstance when the jury was summoned

or impaneled.  Accordingly, Juror 23's misconduct during jury selection caused an unintentional irregularity in impaneling the jury.  *See Mighty*, 17 Va. App. at 498 (holding jurors' failure to disclose convicted felon status on voir dire caused unintentional irregularity in impaneling jury).

Because Juror 23's non-residency was a legal disability and his dishonesty regarding that fact on voir dire caused an unintentional irregularity in impaneling the jury, it was Clark's burden to establish that the defects "probably cause[d] injustice" to him.  Code § 8.01-352(B).  Clark asserts seating Juror 23 prejudiced his defense because (1) it violated the vicinage clauses and (2) Juror 23's dishonesty suggests that he was not impartial and may have disregarded the trial court's jury instructions during deliberations.  We do not consider the first point because, as explained above, Clark's vicinage clause arguments are procedurally defaulted.  And we reject the second point because, as discussed, Clark's claim that Juror 23 harbored actual bias against him or disregarded the trial court's instructions is speculative.  This Court will not reverse "the denial of a motion for a mistrial . . . *unless there exists a manifest probability that [the ruling] was prejudicial.*"  *Nelson*, 41 Va. App. at 732 (emphasis added) (quoting *Taylor*, 25 Va. App. at 17).  Accordingly, because Clark failed to demonstrate such prejudice, the trial court did not err by refusing to order a new trial.

CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed*.